Stacy RUCKER Plaintiff,

v.

UNITED STATES of America
Defendant.

No. 2:04–CV–00914PGC.

United States District Court,
D. Utah, Central Division.

Feb. 10, 2005.

Stacy Rucker, Sheridan, OR, pro se.

## MEMORANDUM OPINION DENYING § 2255 MOTION TO VACATE SENTENCE

CASSELL, District Judge.

In October 2003, Stacy Rucker was sentenced to serve 121 months in prison for armed bank robbery. That sentence was determined, in part, by reference to the Sentencing Guidelines. Since then the United States Supreme Court has held in *Blakely v. Washington*[1] that the Sixth Amendment Right to a Jury Trial requires jury fact-finding before a defendant's sentence can be enhanced under the Washington guideline system. More recently, in *United States v. Booker*,[2] the Court applied the *Blakely* holding to the federal guidelines, finding the Guidelines unconsti-

tutional because they were based on judicial fact-finding.

Mr. Rucker has now filed a motion to set aside his 121–month sentence under 28 U.S.C. § 2255. He contends that *Blakely* (and implicitly *Booker*) should be applied retroactively to him and, therefore, that his sentence was unconstitutional.

Mr. Rucker's claim is without merit. The approach to sentencing required by the *Blakely* and *Booker* decisions is a new rule. Moreover, it is a procedural rule about the allocation of fact-finding power between judge and jury and about proof beyond a reasonable doubt. Such a new procedural rule applies retroactively only where it implicates the fundamental fairness and accuracy of a criminal proceeding. The *Blakely/Booker* rule does not implicate fundamental fairness. Indeed, *Booker* itself requires the courts to continue to "consider" the Guidelines in imposing sentence. Accordingly, the *Blakely/Booker* rule does not apply retroactively to Mr. Rucker (and others whose convictions became final before *Blakely*). Therefore, his motion is denied.

## BACKGROUND

The plaintiff, Stacy Rucker, was charged in a three-count indictment with armed bank robbery,[3] using a firearm during a crime of violence,[4] and felon in possession of a firearm.[5] On July 8, 2003, he pled guilty to armed bank robbery, waiving his right to appeal and to collateral review. In exchange, the government agreed to move for dismissal of the other charges and to recommend a substantial assistance departure.

Mr. Rucker's sentence was calculated based on the 2002 Guidelines Manual.

---

**1.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**2.** —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

**3.** 18 U.S.C. § 2113(a), (d).

**4.** 18 U.S.C. § 924(c).

**5.** 18 U.S.C. § 922(g).

The base offense level for Armed Bank Robbery under 18 U.S.C. § 2113(a),(d) was 20.[6] A two-level enhancement was given for property taken from a financial institution,[7] a seven-level increase for discharging a firearm,[8] and a one-level increase for a loss exceeding $10,000.[9] The court also granted a three-level reduction for acceptance of responsibility. The result was an offense level of 31. Mr. Rucker's past crimes placed him in Criminal History Category IV. Finally, the government filed a substantial assistance motion, recommending a two-level reduction from 31 to 29. The court granted that motion and agreed that a two-level reduction appropriately reflected Mr. Rucker's cooperation. The final calculation was a sentencing range of 121–151 months. On October 27, 2003, the court followed the government's recommendation and sentenced Mr. Rucker to 121 months.

On September 29, 2004, Mr. Rucker (proceeding *pro se* ) filed this § 2255 motion, arguing that his sentence was determined in violation of the Sixth Amendment, citing *Blakely v. Washington.* While his motion was pending, the Supreme Court decided *United States v. Booker.*

## DISCUSSION

### I. The Government Has Waived The Right to Rely on Its Appeal Waiver.

As part of his plea agreement, Mr. Rucker waived the right to appeal his sentence, including any right to file any "motion brought under 28 U.S.C. § 2255." The government, however, has chosen not to invoke this provision in the agreement. Because this provision is designed for the benefit of the government, the court finds that the government has waived the right to rely on this provision.

### II. The Court Need Not Address Whether the Defendant Has Procedurally Defaulted the Right to Raise a *Blakely/Booker* Claim.

■ Mr. Rucker's claim may be procedurally barred. Mr. Rucker did not appeal his sentence. An argument generally cannot be raised for the first time on collateral review unless the petitioner can show (1) cause and prejudice; or (2) a fundamental miscarriage of justice.[10] Neither exception appears to be available to Mr. Rucker.

The "cause and prejudice" exception requires the petitioner to show "that his efforts to raise the claim at an earlier stage were 'impeded' by 'some objective factor external to the defense,' for example, where 'the factual or legal basis for a claim was not reasonably available to counsel' during earlier proceedings."[11] A change in the law can sometimes signify that a claim was not reasonably available at an earlier period.

■ The law has clearly changed since Mr. Rucker was sentenced. While *Apprendi* had been decided before Mr. Rucker was sentenced, it had not been applied to the Guidelines. But " 'even if the law has changed since the earlier petition [a petitioner] also must show that he or his attorney reasonably should not have been aware of the possibility or legal basis for such a claim.' "[12] This court would have a

---

6. U.S.S.G. § 2B3.1.

7. U.S.S.G. § 2B3.1(b)(1).

8. U.S.S.G. § 2B3.1(b)(2).

9. U.S.S.G. § 2B3.1(b)(7).

10. *United States v. Cervini*, 379 F.3d 987, 990–91 (10th Cir.2004).

11. *Daniels v. United States*, 254 F.3d 1180, 1190 (10th Cir.2001) (citation omitted).

12. *Id.* (citation omitted).

hard time concluding that Mr. Rucker's current claim was not reasonably available at the time he was sentenced. It is true that the Circuit courts, including the Tenth Circuit,[13] had specifically held that *Apprendi* did not apply to the Guidelines. But "[e]ven if it appears 'futile' to attempt a particular legal argument, that perceived futility 'cannot constitute' cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' "[14] The claim that *Apprendi* applied to the Guidelines was clearly available to Mr. Rucker at the time he was sentenced. It should have been raised if for no other reason than to preserve the issue since the Supreme Court had not yet ruled. It would appear, then, that Mr. Rucker had no cause for failing to raise this issue on direct appeal.

■ The second exception allows a claim to be raised on collateral review for the first time if the court's refusal to hear the claim would result in a fundamental miscarriage of justice. This requires generally that the petitioner prove his actual innocence.[15] Mr. Rucker pled guilty and no question has been raised since about his guilt.

■ But while there would appear to be a procedural bar to Mr. Rucker's habeas claim, the government has not raised the issue. This court could impose the bar *sua sponte*. The Tenth Circuit held in *United States v. Wiseman*[16] that whether to do so "depends on a weighing of various factors, including the interests of finality and 'the interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice.' "[17] The Tenth Circuit faced a very similar situation in *Wiseman* and declined to impose the procedural bar *sua sponte*. The court noted that while doing so might serve the interests of finality, it would not preserve judicial resources since it would require giving notice and an opportunity to respond to the petitioner on the procedural issue, whereas the merits had already been fully briefed.[18] The court also stated that the government's failure to raise the procedural bar "weighs heavily against its *sua sponte* enforcement."[19]

Weighing all these factors, the court concludes that it should not *sua sponte* raise a procedural bar to addressing Mr. Rucker's claim.

### III. *Blakely* and *Booker* Do Not Apply Retroactively To Habeas Proceedings.

Mr. Rucker was sentenced while the Guidelines were still mandatory. Today, as a result of *Booker* (applying *Blakely* ) the Guidelines are "advisory." In light of this change in the case law, Mr. Rucker contends that the enhancements in his case violated the Sixth Amendment in two ways. First, the enhancements were based upon fact-finding by the court rather than a jury. Second, the facts leading to the enhancements were found by a preponderance of the evidence rather than beyond a reasonable doubt.

■ Were the court to reach this issue on the caselaw available today, the court would conclude that Mr. Rucker's sentence was imposed in violation of the Sixth

---

13. *See United States v. Hishaw*, 235 F.3d 565, 577 (2000), *cert. denied*, 533 U.S. 908, 121 S.Ct. 2254, 150 L.Ed.2d 241 (2001).

14. *Id* at 1191.

15. *Cervini*, 379 F.3d at 991.

16. 297 F.3d 975 (10th Cir.2002).

17. *Id.* at 979–80.

18. *Id.* at 980.

19. *Id.*

Amendment. The government does not argue otherwise. The real question presented here is whether the holdings of *Blakely* (and *Booker*) are retroactive to cases on collateral review, like Mr. Rucker's. Determining whether a constitutional holding of the Supreme Court applies retroactively involves three questions: (1) Was a "new" rule announced?; (2) Is the new rule substantive or procedural?; and (3) If procedural, does the new rule implicate the fundamental fairness and accuracy of criminal proceedings such that without the rule the accuracy of a criminal conviction is seriously diminished?

■ New rules apply to "all criminal cases still pending on direct review." [20] Whether a new rule applies retroactively to final convictions, however, generally depends upon whether the rule is substantive or procedural. New *substantive* rules generally apply retroactively.[21] New *procedural* rules generally do not apply retroactively unless they implicate the fundamental fairness and accuracy of criminal proceedings.[22]

■ Considering these questions, the court concludes that *Blakely* announced a new procedural rule that does not implicate the fundamental fairness and accuracy of criminal proceedings. Accordingly, Mr. Rucker is not entitled to any relief on his § 2255 claim.

### 1. *Blakely* Announced a New Rule.

As explained above, Mr. Rucker's motion rests on the Supreme Court's decision in *Blakely*. While his motion was pending,

however, the Court decided *Booker*. Both cases are clearly relevant, so the court will begin with a discussion of *Blakely*.

The first question is whether *Blakely* announced a new rule regarding sentencing. A decision of the Supreme Court "announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." [23] To consider whether *Blakely* announced a new rule, then, it is helpful to briefly review the earlier precedents.

*Blakely* stems from a line of cases beginning with *Jones v. United States* [24] in 1999. In *Jones*, the Court overturned a sentence under the federal carjacking statute. The statute authorized a sentence of 15 or 25 years depending upon whether the victim suffered "serious bodily injury." The Court was faced with the question of whether this provision was a sentencing factor to be looked at by the judge, or an element of the offense to be determined beyond a reasonable doubt by the jury. The court concluded that treating the provision as a mere sentencing factor would raise serious Sixth Amendment concerns and so the Court interpreted the statute as creating an element of the offense which "must be charged by the indictment, proven beyond a reasonable doubt, and submitted to the jury for its verdict." [25]

The next significant decision came the following year in *Apprendi v. New Jersey*.[26] In *Apprendi*, the Court struck down a New Jersey law by which the maximum sentence of a criminal defendant

---

**20.** *Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004).

**21.** *Id.*

**22.** *Id.* at 2523.

**23.** *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (emphasis in original).

**24.** 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

**25.** *Id.* at 252, 119 S.Ct. 1215.

**26.** 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

could be increased based upon the judge's determination, by a preponderance of the evidence, that the crime was motivated by bias. The Court held that such facts must be found by juries beyond a reasonable doubt. Shortly after *Apprendi* was decided, the Tenth Circuit held that it had announced a new procedural rule that was not retroactive.[27]

Two years after *Apprendi*, the Court decided *Ring v. Arizona*.[28] In *Ring*, the Supreme Court struck down an Arizona law which required the judge, after a jury had declared a defendant guilty of first-degree murder, to determine whether sufficient aggravating factors supported a death penalty. Overturning an earlier decision,[29] *Ring* held that the *Apprendi* rule applied to Arizona's death penalty scheme and, accordingly, that a jury determination of aggravating factors was required.

Last year, the Court decided *Blakely v. Washington*,[30] which applied the *Apprendi* rule to Washington State's sentencing guidelines. Washington had attempted to protect its guidelines system from the *Apprendi* rule by arguing that the guidelines operated within a separate statutory provision setting the minimum and mandatory sentences for the crimes at issue. *Blakely* rejected that distinction, however, carefully defining the "statutory maximum" subject to a jury determination as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the* jury verdict or admitted by the defendant."[31] In a footnote, the Court reserved the issue of whether its holding would apply to the Federal Sentencing Guidelines.[32] The dissenters, however, were quick to predict that the Federal Guidelines would be next. Justice O'Connor, for example, noted the Government's "half-hearted" attempt to distinguish the Guidelines, and that the rigidity of the Federal Guidelines made them even more vulnerable to attack under the majority's reasoning.[33] Justice Breyer suggested that every federal prosecution after *Blakely* which imposed Guidelines enhancements ran the risk of being sent back for resentencing or a new trial.[34]

In *United States v. Booker*,[35] a majority of the Court made the dissenters' predictions come true. Justice Stevens' majority opinion on the merits briefly reviewed *Jones*, *Apprendi*, *Ring*, and *Blakely*, noting that the result in *Booker* was "foreshadow[ed]" as long ago as *Jones*.[36] The court then applied the definition of "statutory maximum" set forth in *Blakely* to the Federal Guidelines and found that they suffered from the same defect as the Washington guidelines. The Court then rejected three distinctions pressed by the Government. "As the dissenting opinions in *Blakely* recognized, there is no distinction of constitutional significance between the Federal Sentencing Guidelines and the

---

27. *United States v. Mora*, 293 F.3d 1213 (10th Cir.2002), *cert. denied*, 537 U.S. 961, 123 S.Ct. 388, 154 L.Ed.2d 315 (2002).

28. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

29. *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

30. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

31. *Id*. at 2537 (emphasis in original).

32. *Id*. at 2538 n. 9 ("The Federal Guidelines are not before us, and we express no opinion on them.").

33. *Id*. at 2549–50 (O'Connor J. dissenting).

34. *Id*. at 2562 (Breyer J. dissenting).

35. —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

36. *Id*. at 748.

Washington procedures at issue in [*Blakely*]."[37] The Court then concluded:

> Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.[38]

Given that the decisions from *Jones* to *Booker* were logically built one upon another, deciding which case announced a "new rule" could have serious ramifications. If this court were to conclude that neither *Blakely* nor *Booker* announced a new rule, but that both were dictated by *Apprendi*, then many of the sentences under the Federal Guidelines between *Apprendi* and *Booker* might have to be revisited. As Justice O'Connor noted in dissent in *Blakely*, "all criminal sentences imposed under the federal ... guidelines since *Apprendi* was decided in 2000 arguably remain open to collateral attack."[39]

Turning to the specifics of this case, this court must decide whether the *Blakely* or *Booker* established a new rule as regards to Mr. Rucker or whether the outcomes of these cases were "*dictated* by precedent existing at the time the defendant's conviction became final."[40] The first step in the analysis is clear. The rule relied upon by Mr. Rucker—that jury fact-finding is required to administer the Guidelines—was not announced before his sentencing. Clearly the precedent going back to *Jones* (or even *Apprendi* or *Ring*) did not dictate the later invalidation of the Guidelines.[41] "A rule is new when it 'breaks new ground or imposes a new obligation' on ... the Federal Government.... A rule is not new where precedents 'inform, or even control or govern' but do not 'compel' its creation."[42]

In this case, the analysis involves asking the question whether in "survey[ing] the case law as it existed" at the time of Mr. Rucker's conviction the court "should have felt compelled" to find that Mr. Rucker's sentence under the Guidelines violated the Sixth Amendment's right to a jury trial.[43] No such compelling precedent existed at the time of his sentencing. To be sure, it can be said that *Jones* foreshadowed the later decisions in *Blakely* and *Booker*.[44] But foreshadowing is not enough. Instead, *Blakely* (and its progeny *Booker*) dramatically changed our understanding of what the Sixth Amendment meant. As Justice O'Connor noted in dissent in *Blakely*, "there is no map of the uncharted territory blazed by today's unprecedented holding."[45] This view of the significance of *Blakely* was widely shared. Just five days later, this court wrote regarding the "potentially cataclysmic implications" of *Blakely*.[46] A leading sentencing scholar wrote an article shortly after *Blakely* which began: "On June 24, 2004, the sen-

**37.** *Id.* at 749.

**38.** *Id.* at 756.

**39.** *Blakely*, 124 S.Ct. at 2549 (O'Connor J. dissenting).

**40.** *Teague*, 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original).

**41.** *See McReynolds v. United States*, 2005 WL 237642 (7th Cir. Feb.2, 2005); *United States v. Siegelbaum*, 359 F.Supp.2d 1104 (D.Or. 2005).

**42.** *Johnson v. McKune*, 288 F.3d 1187, 1196 (10th Cir.2002) (internal citations omitted), *cert. denied*, 537 U.S. 1050, 123 S.Ct. 621, 154 L.Ed.2d 525 (2002).

**43.** *Brown v. Uphoff*, 381 F.3d 1219, 1228 n. 6 (10th Cir.2004).

**44.** *Booker*, 125 S.Ct. at 748.

**45.** *Blakely*, 124 S.Ct. at 2547 n. 1.

**46.** *United States v. Croxford*, 324 F.Supp.2d 1230, 1232 (D.Utah 2004).

tencing reform story was forever changed when an earthquake in the form of the Supreme Court's decision in *Blakely v. Washington* struck the sentencing landscape."[47] Another prominent scholar reported that *Blakely* "has brought the federal criminal justice system to a virtual halt and cast perhaps half of all state sentencing systems in varying degrees of disarray."[48]

Fully confirming that *Blakely* radically changed the sentencing scene is the fact that before *Blakely,* every Circuit handling criminal matters had considered whether the Sixth Amendment required jury determinations in applying the Guidelines. Each rejected this claim.[49]

In sum, it is clear that neither *Blakely* (nor *Booker* ) were "dictated" by precedent as that term has been defined. It is true that the Supreme Court eventually held in *Booker* that *Apprendi* did apply to the Federal Guidelines. But "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule'...."[50] The merits majority's comment in *Booker* that "we reaffirm our holding in *Apprendi* ..." is not, therefore, a controlling indication that *Booker* was "dictated" by *Apprendi.*[51] Instead, for purposes of retroactivity doctrine, the requirement of jury fact-finding under the Guidelines is a new rule. Indeed, Justice Breyer, writing for a majority of the Court, described *Booker* as involving a "new rule."[52]

While it is clear that Mr. Rucker seeks to rely on a new rule, one question remains: was the rule announced by *Blakely* or *Booker?* A strong argument can be made that *Blakely* announced the new rule, and *Booker* merely applied that rule.[53] Shortly after *Blakely,* for example, this court held that "the inescapable conclusion of *Blakely* is that the federal sentencing guidelines have been rendered unconstitutional...."[54] A number of other courts reached similar conclusions about the logical implications of *Blakely.*[55] Those courts that disagreed generally fo-

**47.** Douglas A. Berman, *Examining the* Blakely *Earthquake and Its Aftershocks,* 15 Fed. Sent. Rptr. 307, 307 (June 2004).

**48.** Frank O. Bowman, III, *Function Over Formalism: A Provisional Theory of the Constitutional Law of Crime and Punishment,* 17 Fed. Sent. Rptr. 1, 1 (Oct.2004).

**49.** *United States v. Goodine,* 326 F.3d 26 (1st Cir.2003); *United States v. Luciano,* 311 F.3d 146 (2nd Cir.2002); *United States v. DeSumma,* 272 F.3d 176 (3rd Cir.2001); *United States v. Kinter,* 235 F.3d 192 (4th Cir.2000); *United States v. Randle,* 304 F.3d 373 (5th Cir.2002); *United States v. Helton,* 349 F.3d 295 (6th Cir.2003); *United States v. Johnson,* 335 F.3d 589 (7th Cir.2003); *United States v. Piggie,* 316 F.3d 789 (8th Cir.2003); *United States v. Toliver,* 351 F.3d 423 (9th Cir.2003); *United States v. Mendez–Zamora,* 296 F.3d 1013 (10th Cir.2002); *United States v. Sanchez,* 269 F.3d 1250 (11th Cir.2001); *United States v. Fields,* 251 F.3d 1041 (D.C.Cir.2001).

**50.** *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).

**51.** *Booker,* 125 S.Ct. at 756.

**52.** 125 S.Ct. at 769 (citing *Griffith v. Kentucky* for the proposition that "new rules" apply to cases, like Booker's, on direct appeal).

**53.** *But see McReynolds v. United States,* 2005 WL 237642 (7th Cir. Feb.2, 2005) (asserting without extended analysis that *Booker* announced a new rule).

**54.** *Croxford,* 324 F.Supp.2d at 1238.

**55.** *See, e.g., United States v. Ameline,* 376 F.3d 967 (9th Cir.2004); *United States v. Schaefer,* 384 F.3d 326, 330 (7th Cir.2004); *United States v. Mueffleman,* 327 F.Supp.2d 79 (D.Mass.2004); *United States v. Medas,* 323 F.Supp.2d 436 (E.D.N.Y.2004); *United States v. Shamblin,* 323 F.Supp.2d 757 (S.D.W.Va. 2004).

cused not so much on the dictates of *Blakely*, but adopted a wait-and-see approach, knowing that the Supreme Court was soon to rule on the question.[56] Perhaps the best (and most colorful) example of such reasoning was provided by Chief Judge Dee Benson, my colleague here in the District of Utah. Judge Benson noted that *Blakely* seemed to clearly signal the end of the Guidelines, but announced that he would wait for final word from the Supreme Court:

> The predictions of the Guideline's demise are many and they may well be true. It is difficult to read *Blakely* and not see the same wrecking ball heading directly for the sentencing features of the Comprehensive Crime Control Act of 1984. But predictions don't always hold; even sure things sometimes surprise us. Just last October, thousands of Chicago Cubs fans were certain of their team's first World Series appearance in ninety-five years, with a mere five outs to make against the Florida Marlins. Then one of the Cubs' own fans interfered with the catch of a foul ball, and the unraveling began. As Mark Twain observed in 1897 that "the reports of my death are greatly exaggerated," the Sentencing Guidelines may similarly defy present expectations of their impending demise.[57]

Similarly, other courts that continued applying the Guidelines clearly recognized the "potential transience of [their] decision."[58]

"The purpose of the new rule doctrine is to validate reasonable interpretations of existing precedents."[59] After *Blakely*, the most reasonable understanding of the law—as explained by this court in *Croxford*—was that the Guidelines were constitutionally deficient. Were the court to reach this question today, it would probably hold that *Blakely* rather than *Booker* announced the new rule.

Yet this conclusion is not completely free from doubt. In *Blakely* the Supreme Court clearly reserved the issue of the Federal Guidelines.[60] Relying on this fact, the Seventh Circuit recently concluded (without extended analysis) that *Booker* announced a new rule that was not dictated by *Blakely*.[61] And it was not until after *Booker* that it became completely clear that "a new obligation" had been imposed on federal courts.[62]

This court need not firmly resolve this issue now. Mr. Rucker's conviction was final before *either Blakely* or *Booker* were decided. Regardless of which of the two decisions specifically created the new rule, the rule was created after his sentence had become final. The final resolution of this question can, therefore, await another day.

## 2. The Rule Announced in *Blakely* and *Booker* is a Procedural Rule.

 Prisoners generally cannot take advantage of new rules which are announced after their conviction has become final. There are two exceptions. First, a

---

**56.** *See e.g., United States v. Mincey*, 380 F.3d 102, 106 (2nd Cir.2004) (refusing to reach merits of question because Supreme Court had granted cert and "we can expect to be advised soon in the event that the Supreme Court intends to apply *Blakely* to the Guidelines").

**57.** *Id.* at 4.

**58.** *United States v. Pineiro*, 377 F.3d 464, 473 (5th Cir.2004).

**59.** *Stringer v. Black*, 503 U.S. 222, 237, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

**60.** *Blakely*, 124 S.Ct. at 2538 n. 9.

**61.** *McReynolds v. United States*, 2005 WL 237642 (7th Cir. Feb.2, 2005).

**62.** *Teague*, 489 U.S. at 301, 109 S.Ct. 1060.

new *substantive* rule generally applies retroactively. For example, "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" are applied retroactively.[63] Second, new *procedural* rules apply retroactively only if they " 'implicat[e] the fundamental fairness and accuracy of the criminal proceeding.' "[64] Procedural rules meet this standard if, in the absence of the rule, " 'the likelihood of an accurate conviction is *seriously* diminished.' "[65]

*Blakely* and *Booker* plainly announced procedural, not substantive, rules.[66] As the Seventh Circuit recently explained in finding that *Booker* did not apply retroactively, "No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced."[67] Instead, *Booker* (like *Blakely* before it) is concerned about the allocation of decisionmaking authority—a "prototypical procedural rule[ ]."[68]

New procedural rules generally do not apply retroactively. Such rules

'[M]erely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence,' retroactive effect is given 'to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'[69]

The Supreme Court has cautioned that this class of rules is extremely narrow, and

"it is unlikely that any ... ha[s] yet to emerge."[70]

An initial question is whether a sentencing rule (like that announced in *Blakely* and *Booker*) could ever even fit into this narrow category of cases. After all, the Supreme Court in *Schriro* has referred to this category as covering situations where without the procedure "the likelihood of an accurate *conviction* is seriously diminished."[71] Sentencing rules, of course, presuppose a valid conviction. In this case, for example, Mr. Rucker was validly convicted of armed bank robbery; the only issue before the court is whether his prison sentence should be reduced by some number of months. But in *Schriro*, while the Court spoke in terms of *conviction,* the Court was in fact dealing with a post-conviction sentencing procedure as well (albeit in the arguably special context of a death penalty case). Moreover, the punishment resulting from an inaccurate conviction can certainly be of considerable concern. Mr. Rucker, for example, has been sentenced to serve more than 10 years in prison. So the court will assume that a sentencing rule could fall into the category of watershed rules implicating the fundamental fairness and accuracy of criminal proceedings.

As explained above, Mr. Rucker challenges two procedural aspects of his sentencing: (1) Fact-finding by the court rather than the jury; and (2) Application of a preponderance of the evidence standard rather than the beyond a reasonable

---

63. *Schriro,* 124 S.Ct. at 2522.

64. *Id.* at 2523 (citation omitted).

65. *Id.* (citation omitted).

66. *See McReynolds,* 397 F.3d 479, 480.

67. *Id.*

68. *Schriro,* 124 S.Ct. at 2523.

69. *United States v. Siegelbaum,* 359 F.Supp.2d 1104, 1106–07 (D.Or.2005) (quoting *Schriro,* 124 S.Ct. at 2523).

70. *Schriro,* 124 S.Ct. at 2523 (internal quotation omitted).

71. *Id.*

doubt standard. Neither one of these safeguards is fundamental.

With respect to the first—jury fact-finding—the Supreme Court has already concluded it does not rise to the level of implicating fundamental fairness. In *Schriro v. Summerlin,*[72] the Court concluded that judicial fact-finding—even in determining a death sentence—was not seriously defective. The Court explained that the issue of whether juries or judges make better factfinders is an ongoing debate both in this country and internationally. "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all,* we cannot confidently say that judicial factfinding *seriously* diminishes accuracy."[73] The same reasoning applies here in the context of non-capital sentencing.

With respect to Mr. Rucker's second challenge—the need for proof beyond a reasonable doubt—*Schriro* is not controlling. As Judge Panner cogently explained:

> *Schriro* addressed only the allocation of factfinding responsibility between the judge and jury. There is a second component to *Blakely/Booker* that *Schriro* did not address, namely, that facts used to enhance a sentence, if not admitted, must be proven beyond a reasonable doubt rather than by a preponderance of the evidence.[74]

*Schriro* did not address this issue because the Arizona statute already required proof beyond a reasonable doubt.[75] It may seem odd to address these issues separately, since the requirement of proof beyond a reasonable doubt is inherent in the Sixth Amendment's right to jury trial. On the other hand, the Supreme Court has identified the right to proof beyond a reasonable doubt as part of the right to due process.[76] Furthermore, as was the case in *Schriro,* there are instances where a judge is required to find facts beyond a reasonable doubt, and where juries find facts by a preponderance of the evidence. Both situations violate *Apprendi.* Thus, there are clearly two separate procedural aspects to the *Apprendi* rule that must both be considered.

While *Schriro* is not controlling on the issue of the standard of proof, the Tenth Circuit has suggested the answer. In *United States v. Price,*[77] an unpublished pre-*Booker* decision, the court rejected an appeal from a denial of a § 2255 motion requesting that *Blakely* be applied to the federal Guidelines. *Blakely* had been decided after the district court denied the § 2255 motion but before the case was heard on appeal. The defendant then raised a *Blakely* argument on appeal. The Tenth Circuit recognized that *Blakely* did not specifically apply to the Federal Guidelines, but stated that "even if *Blakely* does apply to the federal guidelines, it will not apply retroactively to cases on collateral review."[78] The court did not elaborate on why *Blakely* would not apply retroactively but did cite the Circuit's earlier decision in *United States v. Mora.*[79] In *Mora,* the

---

**72.** 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

**73.** *Id.*

**74.** *Siegelbaum,* 359 F.Supp.2d at 1107–08.

**75.** *Ring,* 536 U.S. at 597, 122 S.Ct. 2428 ("[I]n Arizona, a 'death sentence may not legally be imposed ... unless at least one aggravating factor is found to exist beyond a reasonable doubt.' The question presented is whether that aggravating factor may be found by the judge ... or whether the Sixth Amend-

ment's jury trial guarantee ... requires that the aggravating factor determination be entrusted to the jury.") (internal citation omitted).

**76.** *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**77.** 118 Fed.Appx. 465 (10th Cir.2004).

**78.** *Id.* at 470–71.

**79.** 293 F.3d 1213 (10th Cir.2002).

defendant had specifically argued that his conviction violated due process of law because "the prosecution did not prove the drug quantity involved in his convictions beyond a reasonable doubt...."[80] The court first held that the new rule announced in *Apprendi* was procedural and not substantive. The court then held that this new procedural rule did not qualify for retroactive application. Interestingly, the court did not distinguish the two aspects of *Apprendi* (jury fact-finding and proof beyond a reasonable doubt). But its decision plainly applied to both, as the petitioner's specific challenge was based upon a due process violation of the right to proof beyond a reasonable doubt. The Circuit explained:

> To qualify as a "watershed" rule of criminal procedure, the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also "alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." This exception is defined narrowly.... While *Apprendi* is doubtless an extremely important decision, it does not meet the test set forth above. *Apprendi* clarifies that certain questions that were previously thought to be properly determined by the court must now be proved to a jury beyond a reasonable doubt. While this rule arguably increases the accuracy of convictions, it is a rule that simply "shifts the fact-finding duties from an impartial judge to a jury." Such a rule is clearly not on the same level as a truly landmark decision such as *Gideon*. While *Gideon* altered our understanding of what constitutes basis due process by

establishing that representation by counsel is fundamental to a fair trial, *Apprendi* merely clarified and extended the scope of a pre-existing right-the right to have all convictions supported by proof beyond a reasonable doubt. *Apprendi* is therefore not a watershed decision.[81]

The court agrees that the new procedures required by *Blakely* and *Booker* do not "seriously diminish[ ] accuracy."[82] This is especially true given how the Guidelines were applied to Mr. Rucker (and other defendants) when the Guidelines were still mandatory. First, under the Guidelines, a defendant's right to a jury finding of guilt beyond a reasonable doubt was fully protected as to the offense of conviction. A judge only became involved in factfinding once the jury had already determined the defendant's guilt (or the defendant had admitted guilt by pleading guilty). In this case, for instance, the bank robbery statute provided a maximum term of imprisonment for Mr. Rucker of 25 years.[83] Before the Guidelines came into effect in 1987, Mr. Rucker could have constitutionally been sentenced to any term—up to an including 25 years—with little procedural protection.[84] The Guidelines simply shaped the exercise of judicial discretion by defining a range of possible prison time. Put another way, under the Guidelines, the judge is only involved in assessing the degree of punishment, not the guilt or innocence of the defendant. This distinction was, of course, rejected in *Blakely* for Sixth Amendment purposes. But it is relevant to the retroactivity analysis where the question is

---

80. *Id.* at 1217.

81. *Id.* at 1218–19 (internal citations omitted).

82. *Schriro*, 124 S.Ct. at 2525.

83. 18 U.S.C. § 2113(d).

84. *See generally* Testimony of Asst. Atty. General Christopher A. Wray, before the House Subcommittee on Crime of the Comm. on the Judiciary (Feb. 10, 2005) (noting the "almost unlimited discretion at sentencing" enjoyed by judges before the Guidelines).

whether the absence of a certain procedure raises questions of "fundamental fairness."

Second, under the mandatory Guidelines, the judge's fact-finding was based on a presentence report with an opportunity for the defendant to challenge any of the facts before the court.[85] This kind of process can not be viewed as fundamentally unfair. To be sure, on occasion there may be some facts proven to the judge by a preponderance of the evidence which a jury might not have found beyond a reasonable doubt. But the difference is not substantial enough to suggest that the accuracy of the process was significantly impaired.

Finally and most important, *Booker* has held that while the Guidelines are no longer mandatory, district courts must still "consider" them in imposing sentence.[86] This advisory Guidelines calculation is to be made on the basis of a preponderance of the evidence standard.[87] The remedial majority in *Booker* refused to "patch onto the present Sentencing Act" the Court's "constitutional jury trial requirement." [88]

The result was the creation of an advisory Guideline system—but a system in which the district court must "consider the Guidelines sentencing range" for the defendant.[89] That Guideline range rests on a preponderance of the evidence standard.[90] Thus, given that *Booker* affirmatively directs the courts to continue to consider the Guideline ranges based on a preponderance of the evidence standard,[91] it is impossible to conclude that sentences derived on that basis before *Booker* were somehow fundamentally flawed.

Mr. Rucker's case provides an illustration of why the new procedural rules announced in *Blakely* will not generally affect the accuracy of sentencings in the federal system. In Mr. Rucker's case the court enhanced the sentence after finding by a preponderance of the evidence: (1) that the money was stolen from a financial institution; (2) that Mr. Rucker discharged a firearm; and (3) that the financial institution's loss exceeded $10,000. Mr. Rucker had the chance to challenge these facts, and post-*Booker* the court would consider

---

85. See FED. R.CRIM. P. 32(i)(3); *see, e.g., United States v. Roberts*, 14 F.3d 502, 521 (10th Cir. 1993) (remanding because district court failed to hold an evidentiary hearing regarding drug quantity determinations).

86. *Booker*, 125 S.Ct. at 764; *see also United States v. Wilson*, 2005 WL 78552 (D.Utah, Jan.13, 2005) (concluding that courts should still give "great weight" to the Guidelines); *United States v. Duran*, —— F.Supp.3d ——, 2005 WL 234778 (D.Utah 2005). (guidelines advisory under "safety valve"). *See generally United States v. Hughes*, 396 F.3d 374, 378 (4th Cir.2005); *United States v. Crosby*, 2005 WL 240916 (2nd Cir.2005).

87. *See United States v. Wilson*, 355 F.Supp.2d 1269, 1272–73 (D.Utah 2005).

88. 125 S.Ct. at 762.

89. *Id.* at 764.

90. *See* U.S.S.G. § 6A1.3, Comment. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").

91. The court is aware that two other district courts have concluded that *Booker* requires prosecutors to charge and prove facts beyond a reasonable doubt. *See, United States v. Barkley*, 369 F.Supp.2d 1309 (N.D.Okla. 2005); *United States v. Huerta–Rodriguez*, 355 F.Supp.2d 1019 (D.Neb.2005). With respect, this court simply disagrees with these two decisions. *See generally* Testimony of Asst. Atty. General Christopher A. Wray, before the House Subcommittee on Crime of the Comm. on the Judiciary (Feb. 10, 2005) (persuasively criticizing *Barkley* and *Huerta–Rodriguez* as adopting the view of the dissenting justices in *Booker* rather than the prevailing justices).

the same facts in imposing sentence. There is simply no reason to believe that Mr. Rucker's sentence would have been any different had these issues been found by the court by a preponderance of the evidence under the mandatory Guidelines, versus considered by the court under the advisory Guidelines.

For all these reasons, Mr. Rucker's challenge to his 121 months is rejected. The new procedural rule of *Blakely* and *Booker* does not "implicat[e] the fundamental fairness and accuracy of the criminal proceeding." [92] Instead, it merely refines our constitutional understanding of how sentencing proceedings are to be conducted. Therefore, Mr. Rucker is not entitled to a new sentencing hearing.

### CONCLUSION

The court finds that the new rule announced in *Blakely* (and *Booker*)—that juries must find facts leading to a sentence above the statutory maximum beyond a reasonable doubt—is procedural and does not qualify for retroactive application. Accordingly, Mr. Rucker's motion to vacate his sentence pursuant to § 2255 in light of *Blakely* and *Booker* is therefore DENIED (# 1–1).

---

**92.** *Schriro,* 124 S.Ct. at 2523.