**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Orlando MORA, Defendant–Appellant.**

No. 01–8020.

United States Court of Appeals,
Tenth Circuit.

June 18, 2002.

Submitted on the briefs: * Michael G. Katz, Federal Public Defender, and James P. Moran, Assistant Federal Public Defender, Office of the Federal Public Defender, Denver, CO, for Appellant.

Matthew H. Mead, United States Attorney, and David A. Kubicheck, Assistant United States Attorney, Office of the United States Attorney, District of Wyoming, Casper, WY, for Appellee.

Before TACHA, Chief Circuit Judge, BRORBY, Senior Circuit Judge, and RUSSELL,** District Judge.

TACHA, Chief Circuit Judge.

Petitioner Orlando Mora appeals the district court's denial of his motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255. We have previously granted a certificate of appealability, and we now AFFIRM.

## I. Background

On February 23, 1998, the Hot Springs County Detention Deputy screened two letters that Orlando Mora had written from jail. These letters were intended for a woman Mr. Mora has identified as his "common law wife." They directed her and Mr. Mora's associates to sell drugs, collect debts, and hide drug paraphernalia. Police executed a search warrant on various relevant properties, and seized a number of items consistent with the manufacture of methamphetamine, over 200 grams of methamphetamine, 28.8 grams of marijuana, and a revolver.

In August of 1998, as part of a separate drug investigation, police arrested Ron Hicks. During an interview by police, Hicks relayed that he was involved with Darrin Brown. A search of Brown's house revealed 225.5 grams of methamphetamine. Brown, in turn, relayed that he had been involved in drug trafficking with Mr. Mora, and gave detailed information regarding his trafficking with Mr. Mora. Based upon this information, police executed a second search warrant at Mora's house. Police found an additional 3.77 grams of methamphetamine, additional drug paraphernalia, and another gun.

Mr. Mora was charged with conspiracy to possess with intent to distribute, and

---

* After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.
** The Honorable David L. Russell, District Judge, United States Court for the Western District of Oklahoma, sitting by designation.

conspiracy to distribute, methamphetamine, 21 U.S.C. § 846, maintaining a place for the manufacture of methamphetamine and marijuana, 21 U.S.C. § 856(a)(1), 18 U.S.C. § 2, manufacturing methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 18 U.S.C. § 2, two counts of possessing methamphetamine with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 18 U.S.C. § 2, and two counts of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e)(1). On December 21, 1998, the defendant was found guilty of all charges except one of the firearm offenses. This court affirmed his convictions on direct appeal. *United States v. Mora*, 208 F.3d 228, 2000 WL 217433 (10th Cir.2000) (unpublished). On March 24, 2000, Mr. Mora filed a motion with the United States District Court for the District of Wyoming under 28 U.S.C. § 2255, requesting that the court vacate, set aside, or correct his sentence. The motion claimed various constitutional violations. The district court rejected his claims on February 21, 2001. Mr. Mora appealed, and on December 12, 2001, this court granted his application for a certificate of appealability. In addition to the claims made before the district court, Mr. Mora contends on appeal that his conviction was in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). For the reasons set forth below, we affirm the district court's ruling.

## II. Discussion

### A. Standard of Review

 We afford a liberal construction to pleadings of a defendant appearing pro se. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In reviewing the denial of a § 2255 motion, we review for clear error the district court's factual findings, and we review legal conclusions de novo. *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir.1998).

### B. Procedural Bar

 Mr. Mora raises a number of arguments for the first time on appeal. One of these is based on *Apprendi*, and we address this claim separately below. With respect to the remainder of these new arguments, we find no reason to deviate from the general rule that we do not address arguments presented for the first time on appeal. *Oyler v. Allenbrand*, 23 F.3d 292, 299 n. 8 (10th Cir.1994). Nor do we consider arguments raised for the first time in a reply brief. *Codner v. United States*, 17 F.3d 1331, 1332 n. 2 (10th Cir. 1994); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir.1993).

 The government argues that most of Mr. Mora's claims are procedurally barred because Mr. Mora failed to raise them on direct appeal, and that we are required to enforce this bar under *United States v. Allen*, 16 F.3d 377, 378 (10th Cir.1994). When a defendant fails to raise a claim on direct appeal, he is barred from pursuing that claim in a later § 2255 proceeding, absent a showing of cause and actual prejudice, or a fundamental miscarriage of justice. *Id.* This bar does not apply to an ineffective assistance of counsel claim, however, *United States v. Galloway*, 56 F.3d 1239, 1241 (10th Cir.1995), and we therefore address this claim below. The remainder of Mr. Mora's claims are presented for the first time in a habeas proceeding, involve longstanding settled case law (unlike his *Apprendi* claim, which we address below) and were not contested on direct appeal. Mr. Mora has not made the requisite showing with respect to these other claims. Inasmuch as a basis for overcoming the procedural bar might be demonstrated obliquely by construing his pleadings to incorporate an ineffective as-

sistance of counsel argument to *these* claims, we substantially agree with the analysis of the district court.

We address the ineffective assistance of counsel and *Apprendi* claims below. For the reasons stated in this section, however, we decline to address Mr. Mora's other arguments.

## C. Ineffective Assistance of Counsel

 Ineffective assistance of counsel claims are mixed questions of law and fact that we review de novo. *United States v. Prows*, 118 F.3d 686, 691 (10th Cir.1997). These claims are guided by the now familiar *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this test, a petitioner must show that "his trial counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir.1993) (quoting *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

 Mora claims that he was denied effective assistance of counsel in two respects. First, he argues that his trial counsel failed to challenge the sufficiency of the evidence on his convictions. However, the record plainly shows that trial counsel moved for a judgment of acquittal on all counts. The record also shows that counsel made motions to suppress various evidence and testimony, and this further undermines Mora's argument that counsel's failure to challenge the sufficiency of the evidence more vigorously constituted ineffective assistance. Second, Mora argues that trial counsel failed to move to exclude hearsay testimony regarding a transaction between "Tony" and "Hector." However, Mora was not convicted on the basis of any out-of-court statements allegedly made by Tony or Hector. Rather, they were incidental persons included in testimony by Darrin Brown, a witness who *was* at trial. Hence, Mr. Mora was not deprived of his Sixth Amendment rights, and he was not convicted on the basis of hearsay. We therefore agree with the district court that Mr. Mora did not receive ineffective assistance of counsel on these bases.

## D. Apprendi [1]

 Mr. Mora claims that because the prosecution did not prove the drug quantity involved in his convictions beyond a reasonable doubt, his sentencing was in violation of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Before reaching the issue of whether Mr. Mora's conviction was, in fact, in violation of *Apprendi*, we must first address two threshold questions: whether Mr. Mora's failure to raise

---

1. Mr. Mora also argues that he was convicted without proper due process of law in light of *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that the "beyond a reasonable doubt" standard has constitutional status). *Winship* is the case upon which *Apprendi's* reasoning is largely founded. Therefore, Mr. Mora's *Winship* argument is subsumed within his *Apprendi* argument. However, we also note that Mora's argument rests upon the specific rule announced for the first time in *Apprendi*—that a factor increasing a penalty beyond the statutory maximum must be treated as an element of the crime subject to the rule of *Winship*, rather than as a "sentencing factor" that must be proved by a preponderance of the evidence. Thus, the *Apprendi* Court's reliance upon *Winship* does not alter the fact that Mora's claim can only succeed if *Apprendi* is retroactively applicable.

the *Apprendi* issue in the district court bars him from raising the issue on appeal, and whether *Apprendi* is a "watershed" decision that is made retroactive to initial habeas petitions.

We generally do not consider issues raised for the first time on appeal. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir.1993). We will, however, occasionally entertain arguments raised for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (leaving the determination of when to consider issues for the first time on appeal to the discretion of the courts of appeals). This is such an instance. Mr. Mora is appearing pro se. His incarceration limits his ability to examine recent Supreme Court precedents. This limitation is exacerbated by the fact that *Apprendi* was decided after Mr. Mora submitted his initial motion in the district court, and was less than six months old at the time that the district court decided Mr. Mora's motion. Additionally, because of our decision in *Browning v. United States*, 241 F.3d 1262, 1265 (10th Cir.2001), which held that *Apprendi* did not apply retroactively to successive habeas petitions, refusal to consider Mr. Mora's appeal now would effectively bar him from ever raising his *Apprendi* claim. Given these particular circumstances, we consider the question for the first time on appeal.

We must next decide whether *Apprendi* is retroactively applicable to initial habeas petitions. In *Browning*, we decided that although *Apprendi* created a new rule of constitutional law, the "gatekeeping" provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, prevents *Apprendi* from being applied retroactively to successive habeas petitions. *Browning*, 241 F.3d at 1265–66 (interpreting 28 U.S.C. § 2255, which allows successive habeas petitions only if there is newly

discovered, clearly exculpatory evidence introduced, or if the case raises a new rule of constitutional law that has been made retroactive by the Supreme Court); *Tyler v. Cain*, 533 U.S. 656, 662, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (holding that new rules of constitutional law must be made explicitly retroactive before they may be raised in successive habeas petitions). *Browning*, however, left open the question of whether *Apprendi* is retroactively applicable to *initial* habeas petitions. *Browning*, 241 F.3d at 1264.

 Initial habeas petitions based upon a new rule of constitutional law are not guided by the gatekeeping language of AEDPA, but rather are guided by the framework established by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Browning*, 241 F.3d at 1264. Under the *Teague* framework, new rules of constitutional law are not made retroactive to habeas petitions unless they "place[ ] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or define "watershed rules" that "require[ ] the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 311, 109 S.Ct. 1060 (internal citations and quotation marks omitted). The first exception is not applicable here. However, *Apprendi* is arguably a "watershed" rule of criminal procedure, hence falling under the second exception. *See Apprendi*, 530 U.S. at 524, 120 S.Ct. 2348 (O'Connor, J., dissenting) ("Today, in what will surely be remembered as a watershed change in constitutional law, the Court imposes as a constitutional rule the principle it first identified in *Jones*."). To qualify as a "watershed" rule of criminal procedure, the rule must not only improve the accuracy with which defendants are convicted or acquitted, but

also "alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (quoting *Teague,* 489 U.S. at 311, 109 S.Ct. 1060). This exception is defined narrowly. *Johnson v. McKune,* 288 F.3d 1187, 1197–98 (10th Cir.2002). Watershed rules are on the magnitude of the rule announced in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (identifying *Gideon* as a watershed decision).

While *Apprendi* is doubtless an extremely important decision, it does not meet the test set forth above. *Apprendi* clarifies that certain questions that were previously thought to be properly determined by the court must now be proved to a jury beyond a reasonable doubt. While this rule arguably increases the accuracy of convictions, it is a rule that simply "shifts the fact-finding duties from an impartial judge to a jury." *United States v. Sanders,* 247 F.3d 139, 148 (4th Cir.2001). Such a rule is clearly not on the same level as a truly landmark decision such as *Gideon.* While *Gideon* altered our understanding of what constitutes basic due process by establishing that representation by counsel is fundamental to a fair trial, 372 U.S. at 344, 83 S.Ct. 792, *Apprendi* merely clarified and extended the scope of a preexisting right—the right to have all convictions supported by proof beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Apprendi* is therefore not a watershed decision.

Our conclusion is buttressed by the Supreme Court's recent decision in *United States v. Cotton,* 535 U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). There, the trial court failed to submit the question of drug quantity to the jury. The government conceded that the defendant's enhanced sentence was therefore erroneous under *Apprendi. Id.* at 1785. The Supreme Court nonetheless upheld the defendant's conviction, holding that, due to the overwhelming evidence on the drug quantity question, "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1786. Given that an admitted *Apprendi* error can be excused if the evidence on the factor is overwhelming, it is difficult for us to conclude that *Apprendi* can be considered a watershed decision, representing rights fundamental to due process. We therefore agree with our sister circuits that have considered the issue that *Apprendi* is not a watershed decision and hence is not retroactively applicable to initial habeas petitions. *See McCoy v. United States,* 266 F.3d 1245, 1256–58 (11th Cir.2001); *United States v. Moss,* 252 F.3d 993, 997–1000 (8th Cir.2001); *Jones v. Smith,* 231 F.3d 1227, 1237–38 (9th Cir. 2000).

### *III. Conclusion*

For all of the foregoing reasons, we AFFIRM the decision of district court.

We grant Mr. Mora's motion to file a supplemental pro se brief and motion to proceed *in forma pauperis.*