**<u>PUBLISH</u>**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

RANDALL EUGENE CANNON,

   Petitioner,

 v.

MIKE MULLIN, Warden, Oklahoma
State Penitentiary,

   Respondent.

No. 02-6217

---

ORDER

Filed July 19, 2002

---

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge and
**MURPHY**, Circuit Judge.

---

**MURPHY**, Circuit Judge.

   This case is before the court on Randall Eugene Cannon's Emergency

Application for Stay of Execution and Emergency Motion for an Order Pursuant

to 28 U.S.C. § 2244(b)(3)(A) for Permission to File a Second Petition for Habeas

Corpus Relief Under Section 2254.  Because Cannon has not made a *prima facie*

showing that his application to file a second section 2254 habeas petition satisfies

the requirements of section 2244(b), this court **denies** his request to file a second section 2254 petition and his accompanying request for a stay of execution.[1]

Cannon was convicted of murder and arson in Oklahoma state court; he was sentenced to death for the murder conviction. *Cannon v. State*, 904 P.2d 89 (Okla. Crim. App. 1995). He is scheduled to be executed on July 23, 2002, at 6:00 p.m. Cannon filed a previous 28 U.S.C. § 2254 petition in the United States District Court for the Western District of Oklahoma raising numerous claims of constitutional error during his state trial proceedings. This court affirmed the district court's denial of habeas relief. *Cannon v. Gibson*, 259 F.3d 1253 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1966 (2002). Cannon now seeks permission from this court to file a second habeas petition[2] raising the following claim: Oklahoma's capital sentencing statute, 21 Okla. Stat. tit. 21, § 701.11, and the jury instructions given during the penalty phase of Cannon's trial violate the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 122 S. Ct. 2428 (2002).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

---

[1] This court **grants** Cannon's request to file a reply brief.

[2] *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Ring*, the Supreme Court extended the rule it announced in *Apprendi* to the death penalty context. In particular, the Court noted that under Arizona law, the maximum punishment for first-degree murder was life imprisonment unless one of the statutorily enumerated aggravating factors was found to exist beyond a reasonable doubt. *Ring*, 122 S. Ct. at 2434-35, 2437. The Court further noted that under Arizona law it is the trial court that is empowered to determine whether the requisite aggravating circumstance is present. *Id.* at 2434-35. Accordingly, the case presented the following question to the Court: "whether [the requisite] aggravating factor may be found by the judge, as Arizona law specifies, or whether the Sixth Amendment's jury trial guarantee, made applicable to the States by the Fourteenth Amendment, requires that the aggravating factor determination be entrusted to the jury." *Id.* at 2437 (footnote omitted). In line with its decision in *Apprendi*, the Court concluded that the Sixth Amendment mandated that the existence of an aggravating factor necessary for the imposition of the death penalty must be found by a jury, rather than a sentencing judge. *Id.* at 2443.

In his application to file a second habeas petition, Cannon asserts that Oklahoma's capital sentencing scheme, along with the jury instructions given in his case, suffers the same infirmity identified by the Supreme Court in *Ring*. In

particular, Cannon notes that under Oklahoma law,

> The jury, if its verdict be a unanimous recommendation of death, shall designate in writing . . . the statutory aggravating circumstance or circumstances which it unanimously found beyond a reasonable doubt . . . . Unless at least one of the statutory aggravating circumstances enumerated in this act is so found or if it is found that any such aggravating circumstance is outweighed by the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

Okla. Stat. tit. 21, § 701.11. Although the question of the existence of the statutory aggravators making Cannon eligible for the death penalty was submitted to the jury and expressly made subject to proof beyond a reasonable doubt, the jury was not instructed that it needed to find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances. Because both of these predicate "factual" determinations are necessary to make a defendant eligible for a death sentence under Oklahoma law, and because Oklahoma law does not require that the second such determination be made by reference to the proof-beyond-a-reasonable-doubt standard, Cannon asserts that Oklahoma's death penalty scheme and his resulting death sentence are constitutionally infirm.

The ability of state prisoners to bring second or successive section 2254 habeas petitions is strictly limited. *See Tyler v. Cain*, 533 U.S. 656, 661 (2001). The relevant statutory provision, 28 U.S.C. § 2244(b), provides as follows:

(b)(1) A claim presented in a second or successive habeas corpus

-4-

application under section 2254 that was presented in a prior application shall be dismissed.

  (b)(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

      (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

      (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

      (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

It is clear that Cannon's *Ring* claim was not presented in a previous section 2254 habeas petition; thus, it is not subject to automatic dismissal under section 2244(b)(1). It is likewise clear that Cannon's *Ring* claim does not rely on newly discovered evidence and does not, therefore, implicate section 2244(b)(2)(B). Accordingly, Cannon is entitled to permission to file a second section 2254 habeas petition only if *Ring* set forth a new rule of constitutional law that was previously unavailable and the Supreme Court has made that new rule retroactive to cases on collateral review. *See id.* § 2244(b)(2)(A).

Cannon's argument in favor of his assertion that the Supreme Court has made *Ring* retroactive to cases on collateral review is two-fold: (1) because *Ring* announced a new rule of substantive criminal law under the Eighth Amendment applicable to state capital crimes, the limitations of *Teague v. Lane*, 489 U.S. 288

(1989), therefore do not apply, and the requirements of section 2244(b)(2)(A) are met; and (2) the Supreme Court has made *Ring* retroactive to cases on collateral review through the combination of *Teague*, *Ring*, and cases preceding *Ring* in the *Apprendi* line. Neither assertion is convincing.

Cannon is simply incorrect in asserting that the combination of *Teague*, *Ring*, and the cases in the *Apprendi* line render the rule announced in *Ring* retroactively applicable to cases on collateral review. The Supreme Court considered the contours of section 2244(b)(2)(A) in *Tyler*. The Court began by noting that "under this provision, the Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court." 533 U.S. at 663. The Court went on to note that the only way it could make a rule retroactively applicable is through a "holding" to that effect. *Id.* "The Supreme Court does not 'ma[k]e' a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts." *Id.*; *see also id.* at 666 ("The most [Tyler] can claim is that, based on the principles outlined in *Teague*, this Court *should* make *Cage* [*v. Louisiana*, 498 U.S. 39 (1990) (per curiam)] retroactive to cases on collateral review. What is clear, however, is that we have not 'made' *Cage* retroactive to cases on collateral

-6-

review."). The Court did recognize that it could "make a rule retroactive over the course of two cases," but only if "the holdings in those cases necessarily dictate retroactivity of the new rule." *Id.* at 666.

Despite this language from *Tyler*, the thrust of Cannon's multiple-case argument is that the rule set out in *Apprendi,* and extended in *Ring* to the death penalty context, fits within *Teague*'s second exception for watershed rules of criminal procedure and has therefore been made retroactively applicable by the Supreme Court to cases on collateral review. This argument seriously misconstrues *Tyler*. It is clear that the mere fact a new rule *might* fall within the general parameters of overarching retroactivity principles established by the Supreme Court (i.e., *Teague*) is not sufficient. *See Tyler*, 533 U.S. at 663 (holding that the Court does not make a rule retroactive "when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts"); *id.* at 670 (O'Connor, J., concurring) ("[T]he relevant inquiry is not whether the new rule comes within the *Teague* exception at all, but the more narrow and manageable inquiry of whether this Court's holdings, by strict logical necessity, 'ma[k]e' the new rule retroactive within the meaning of § 2244(b)(2)(A)."). Cannon has failed to identify language in any of the cases

upon which he relies[3] mandating "by strict logical necessity" that the Supreme

Court has made the rule in *Ring* retroactively applicable to cases on collateral

review. *Id.* at 670 (O'Connor, J., concurring). The Court's recognition in *Tyler*

of the possibility that multiple cases can render a new rule retroactive does not, as

Cannon suggests, give this court license to grant permission to file a second

habeas petition premised on our own determination that a new rule fits within the

second *Teague* exception. Such an approach would lead this court into the exact

quagmire identified by the Court in *Tyler*. *See id.* at 664 ("The stringent time

limit [for deciding applications to file second or successive habeas petitions set

out in 28 U.S.C. § 2244(b)(3)(D)] suggests that the courts of appeals do not have

---

[3]The respondent appears to argue that Cannon cannot possibly show that
the combination of cases he cites renders *Ring* retroactive for purposes of
collateral review because all of the cases predate *Ring*. *See* Respondent's Brief
at 9 ("The Petitioner, however, cites to prior decisions instead of any decision
since *Ring*."). As Justice O'Connor noted in her concurring opinion in *Tyler*,
which concurrence provided the fifth vote for the majority,

> But, as the Court recognizes, a single case that expressly holds a rule
> to be retroactive is not a *sine qua non* for the satisfaction of this
> statutory provision. *Ante*, at 2484. This Court instead may
> "ma[k]e" a new rule retroactive through multiple holdings that
> logically dictate the retroactivity of the new rule. *Ibid.* To apply the
> syllogistic relationship described by Justice BREYER, *post*, at 2488
> (dissenting opinion), if we hold in Case One that a particular type of
> rule applies retroactively to cases on collateral review and hold in
> Case Two that a given rule is of that particular type, then it
> necessarily follows that the given rule applies retroactively to cases
> on collateral review. In such circumstances, we can be said to have
> "made" the given rule retroactive to cases on collateral review.

*Tyler v. Cain*, 533 U.S. 656, 668-69 (2001) (O'Connor, J., concurring).

to engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first instance.").

In the alternative, Cannon argues that *Ring* announced a new rule of *substantive* criminal law and that the Supreme Court's decision in *Bousley v. United States*, 523 U.S. 614, 620 (1998), holding that *Teague*'s retroactivity analysis does not apply to substantive interpretations of criminal statutes, renders *Ring* retroactive for purposes of collateral review. It is clear, however, that *Ring* is simply an extension of *Apprendi* to the death penalty context. *See Ring*, 122 S. Ct. at 2432. Accordingly, this court's recent conclusion in *United States v. Mora*, ___ F.3d ___, 2002 WL 1317126, at *4 (10th Cir. June 18, 2002), that *Apprendi* announced a rule of criminal procedure forecloses Cannon's argument that *Ring* announced a substantive rule.

Cannon's attempt to distinguish *Ring* from *Apprendi*, and therefore avoid *Mora*, on the basis that the decision in *Apprendi* is grounded in the Sixth Amendment and the decision in *Ring* is grounded in the Eighth Amendment is unavailing. The concluding paragraph of the majority opinion in *Ring* unequivocally establishes that the decision is based solely on the Sixth Amendment. 122 S. Ct. at 2443 ("The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the

factfinding necessary to put him to death.  We hold that the Sixth Amendment applies to both.").  Justice Breyer refused to join the majority opinion because it was based on *Apprendi*, but nevertheless concurred in the judgment because he thought that "jury sentencing in capital cases is mandated by the Eighth Amendment." *Id.* at 2446 (Breyer, J., concurring in the judgment).  Although the Court in *Ring* did discuss the "Eighth Amendment provenance of aggravating factors," it did so exclusively in the context of rejecting the argument "that the Eighth Amendment's restriction on a state legislature's ability to define capital crimes should be compensated for by permitting States more leeway under the Fifth and Sixth Amendments in proving an aggravating fact necessary to a capital sentence." *Id.* at 2442 (quotation omitted).  Accordingly, Cannon's attempt to distinguish *Ring* from *Apprendi* is unconvincing, and this panel is bound by the determination in *Mora* that *Apprendi* established a new rule of criminal procedure.

For the reasons set out above, Cannon has failed to make a *prima facie* showing that the Supreme Court has made *Ring* retroactively applicable to cases on collateral review.  Accordingly, this court **DENIES** both his application for permission to file a second habeas petition and his accompanying emergency request for a stay.  Pursuant to 28 U.S.C. § 2244(b)(3)(E), our denial of authorization to file a second habeas application is not appealable and cannot be

the subject of a petition for rehearing or a writ of certiorari. Thus only the Supreme Court, exercising its original jurisdiction, can make the decision necessary to provide Cannon the relief he seeks.

Entered for the Court

PATRICK FISHER, Clerk of Court

by:
        Deputy Clerk