UNITED STATES of America,
Plaintiff–Appellant,

v.

Joshua PRICE, Jr., Defendant–
Appellant.

No. 04–7058.

United States Court of Appeals,
Tenth Circuit.

March 8, 2005.

Dennis Fries, Asst. U.S. Attorney, Muskogee, OK, for Plaintiff–Appellee.

Joshua Price, Jr., pro se.

Before EBEL, MURPHY and McCONNELL, Circuit Judges.

EBEL, Circuit Judge.

Defendant–Appellant Joshua Price, Jr., seeks rehearing, with suggestion for en banc consideration, from this panel's decision denying him a certificate of appealability (COA), see 28 U.S.C. § 2253(c), to appeal the district court's decision denying him 28 U.S.C. § 2255 relief from his feder-

al drug trafficking convictions. *See United States v. Price,* 265 F.3d 1097, 1100–01 (10th Cir.2001) (listing Price's twenty-one federal convictions). In his rehearing petition, Price asks us to reconsider his claims that *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), requires us to vacate his sentences because the jury never found the type and quantity of drugs for which the district court sentenced him, and never found that Price killed a government witness, a factual finding the district court made in applying U.S.S.G. § 2A1.1 to enhance Price's sentence.[1] *See Price,* 118 Fed.Appx. at 471. In *Blakely,* the Supreme Court invalidated Washington's sentencing scheme, holding that scheme violated the Sixth Amendment because it required a sentencing court to impose a sentence "not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" *United States v. Booker,* —— U.S. ——, ——, 125 S.Ct. 738, 749, 160 L.Ed.2d 621 (2005) (quoting *Blakely,* —— U.S. at ——, 124 S.Ct. at 2537).

In our prior decision in this case, we denied Price a COA on his *Blakely* claims because the Supreme Court had not extended *Blakely's* holding to the federal sentencing guidelines and because, even if the Court did apply *Blakely* to the federal guidelines, *Blakely* would not apply retroactively to initial § 2255 motions for collateral relief. *See Price,* 118 Fed.Appx. at 471. After our panel decision, however, the Supreme Court did extend *Blakely* to the federal sentencing guidelines. *See Booker,* —— U.S. at —— ——, —— — ——, 125 S.Ct. at 749–50, 755–56. In light of *Booker,* Price asks us to reconsider our prior holding that *Blakely* does not apply retroactively to initial § 2255 motions.

(Reh'g petition at 1–2.) Reviewing this question de novo, *see United States v. Mora,* 293 F.3d 1213, 1216, 1217–19 (10th Cir.2002), we reaffirm that *Blakely* does not apply retroactively to Price's initial § 2255 motion. Therefore, we deny his petition for rehearing, with its suggestion for rehearing en banc.

## I. Does *Blakely* set forth a substantive or a procedural rule?

 Where a Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review. As to convictions [like Price's,] that are already final, however, the rule applies only in limited circumstances." *Schriro v. Summerlin,* —— U.S. ——, ——, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004) (citation omitted). While new substantive rules generally apply retroactively, new procedural rules do not. *See id.* at 2522–23. As an initial matter, therefore, we must decide whether *Blakely* announced a procedural or a substantive rule.

"A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. In contrast, rules that regulate only the *manner of determining* the defendant's culpability are procedural." *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2523 (citations omitted).

 It is clear that *Blakely* did not alter the range of conduct or the class of persons that the law punishes. Rather, *Blakely* "altered the range of permissible methods for determining" the appropriate length of punishment. *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2523. "Rules that allocate decision-making authority in

---

**1.** Although Price previously requested COA on a number of other § 2255 claims, *see United States v. Price,* 118 Fed.Appx. 465, 467–68 (10th Cir. Dec.16, 2004) (unpublished), he now seeks rehearing only on his *Blakely* claims. (Reh'g petition at 1–2.)

this fashion are prototypical procedural rules." *Id.* (concluding holding in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), that jury, rather than judge, had to find existence of aggravating factors that would make capital defendant eligible for death sentence, was procedural rather than substantive rule). *Blakely,* therefore, sets forth a procedural, rather than a substantive, rule. *See McReynolds v. United States,* 397 F.3d 479, 480–81 (7th Cir.2005) (reaching same conclusion); *United States v. Siegelbaum,* 359 F.Supp.2d 1104, 1107, 2005 WL 196526, at *2 (D.Or. Jan.26, 2005) (same).

## II. Does *Blakely's* procedural rule apply retroactively to initial § 2255 motions?

Because *Blakely* announces a procedural rule, we apply *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality), to determine whether *Blakely* applies retroactively to initial § 2255 motions. *See Mora,* 293 F.3d at 1218; *see also Bousley v. United States,* 523 U.S. 614, 619–20, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). *Teague* requires a three-step analysis. *See O'Dell v. Netherland,* 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). First, was Price's conviction final prior to the Supreme Court's decision in *Blakely? See O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969. Second, would a court considering Price's claims "at the time his conviction became final[, feel] compelled by existing precedent to conclude" *Blakely's* rule "was required by the Constitution"? *O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969 (quotation omitted). If not, then *Blakely's* rule is new. *See O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969. If it is new, then the third *Teague* inquiry is whether the new rule fits into "one of the two narrow exceptions to the *Teague* doctrine." *O'Dell,* 521 U.S. at 156–57, 117 S.Ct. 1969. Only if it fits into a *Teague* exception will a new procedural rule apply retroactively.

## A. Did Price's conviction become final before the Supreme Court decided *Blakely?*

■ We must first determine when Price's conviction became final. For *Teague* purposes, a conviction becomes final when the availability of a direct appeal has been exhausted, and the time for filing a certiorari petition with the Supreme Court has elapsed, or the Court has denied a timely certiorari petition. *See Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). In Price's case, we denied his direct appeal on September 11, 2001, *see Price,* 265 F.3d at 1097, and the Supreme Court denied his certiorari petition May 28, 2002, *see Price v. United States,* 535 U.S. 1099, 122 S.Ct. 2299, 152 L.Ed.2d 1056 (2002). His convictions, therefore, were final on May 28, 2002, prior to the Supreme Court deciding *Blakely* on June 24, 2004.

## B. Would a court, considering Price's claim on May 28, 2002, have felt compelled by existing precedent to conclude *Blakely's* rule was constitutionally required?

We turn to the next *Teague* inquiry, which is whether, at the time Price's convictions became final, on May 28, 2002, a court considering Price's Sixth Amendment claims would have felt compelled by existing precedent to conclude *Blakely's* rule was constitutionally required; that is, at that time, would a court have felt compelled by existing precedent to conclude that the Sixth Amendment precluded a federal sentencing court from imposing a sentence that was "not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" *Booker,* —— U.S. at ——, 125 S.Ct. at 749 (quoting *Blakely,* —— U.S. at ——, 124 S.Ct. at

2537). We conclude a court would not have felt so compelled. Therefore, we hold that *Blakely* announced a new rule. *See O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969.

"In general, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government"; that is, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. "The new rule principle ... validates reasonable, good-faith interpretations of existing precedents, ... even if those good-faith interpretations are ... contrary to later decisions." *Graham v. Collins,* 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (quotation omitted).

*Blakely* is part of a line of Sixth Amendment cases starting with *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and, most importantly, *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See Booker,* —— U.S. at ——, 125 S.Ct. at 748. At the time Price's convictions became final, the Supreme Court had already decided *Apprendi.* In *Apprendi,* the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. *Apprendi,* itself, stated a new constitutional rule. *See Mora,* 293 F.3d at 1218.

Based upon *Apprendi's* language addressing situations where a sentencing court "increase[d] the penalty for a crime beyond the statutory maximum," 530 U.S. at 490, 120 S.Ct. 2348, this court subsequently applied *Apprendi* only where a sentencing court had imposed a sentence above the statutory maximum permitted by the statute of conviction, regardless of what fact finding the court, rather than the jury, conducted to impose a sentence within that statutory maximum. *See, e.g., United States v. O'Flanagan,* 339 F.3d 1229, 1232 n. 2 (10th Cir.2003) (holding defendant could not assert *Apprendi* error because "his sentence does not exceed the statutory maximum"); *United States v. Bennett,* 329 F.3d 769, 778 (10th Cir.2003) ("*Apprendi* is not implicated ... where judges find facts increasing the mandatory minimum sentence below the maximum sentence for the crime committed"); *United States v. Fredette,* 315 F.3d 1235, 1245 (10th Cir.2003) ("*Apprendi* does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum."). So did other circuit courts. *See Simpson v. United States,* 376 F.3d 679, 681 (7th Cir.2004) (noting that, "before *Blakely* was decided, every federal court of appeals had held that *Apprendi* did not apply to guideline calculations made within the statutory maximum," citing cases). The Supreme Court also seemingly approved that interpretation of *Apprendi* when, in *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Court held that judicial fact finding that increased a mandatory minimum sentence did not violate *Apprendi* so long as the resulting sentence was still below the statutory maximum authorized by the offense of conviction. *See* 536 U.S. at 550, 567–69, 122 S.Ct. 2406.

It was not until *Blakely* that the Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* —— U.S. at ——, 124 S.Ct. at 2537; *see also Simpson,* 376 F.3d at 681 (7th Cir.2004) (noting "*Blakely* ...

alters courts' understanding of [Apprendi's ] 'statutory maximum' "). Therefore, at the time Price's convictions became final, after Apprendi but before Blakely, a court would not have felt compelled to conclude Blakely's rule was constitutionally required. Blakely, therefore, announced a new rule. See United States v. Sanchez–Cruz, 392 F.3d 1196, 1201 (10th Cir.2004) (referring to Blakely as announcing new criminal rule).

### C. Does Blakely's new rule fit into one of Teague's two narrow exceptions to the non-retroactive application of new procedural rules?

■ A new procedural rule, such as that announced in Blakely, will apply retroactively only if it falls into one of two narrow exceptions. See Teague, 489 U.S. at 307, 109 S.Ct. 1060. The first exception applies to a new rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Teague, 489 U.S. at 307, 109 S.Ct. 1060 (quotation omitted). Blakely does not implicate that exception.[2] See Mora, 293 F.3d at 1218 (holding Apprendi does not implicate Teague's first exception).

Teague's second exception applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. O'Dell, 521 U.S. at 157, 117 S.Ct. 1969 (quotation omitted). "To qualify as a 'watershed' rule of criminal procedure, the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the bedrock procedural elements essential to the fairness of the proceeding." Mora, 293 F.3d at 1218–19 (quotations omitted). "This exception is defined narrowly." Id. at 1219.

Blakely did not announce a new watershed rule of criminal procedure that implicates the "fundamental fairness and accuracy of the criminal proceeding." O'Dell, 521 U.S. at 157, 117 S.Ct. 1969. First, Blakely does not affect the determination of a defendant's guilt or innocence. Rather, it addresses only how a court imposes a sentence, once a defendant has been convicted.

Further, the Supreme Court has previously determined that a change in the law requiring that juries, rather than judges, make the factual findings on which a sentence is based did not announce a watershed rule of criminal procedure.[3] See Summerlin, —— U.S. at —— - ——, 124 S.Ct. at 2524–26. Similarly, we have previously held that a change in the law requiring juries to find these sentencing facts beyond a reasonable doubt, rather than by a preponderance of the evidence, also does not announce a watershed rule of criminal procedure. See Mora, 293 F.3d at 1219 (holding Apprendi, including its

---

**2.** Summerlin notes that, although the Court "sometimes referred to rules ... falling under" Teague's first exception, "they are more accurately characterized as substantive rules not subject to [Teague's ] bar." —— U.S. at —— n. 4, 124 S.Ct. at 2522 n. 4. Blakely's rule does not implicate this category of rules, whether we call those rules substantive, rather than procedural, or procedural rules falling under Teague's first exception.

**3.** Summerlin addressed only the retroactive application of Apprendi's holding, applied to Arizona's death penalty scheme in Ring, 536

U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556, that a jury rather than the court make factual findings underlying the sentence imposed. See Summerlin, —— U.S. at —— - ——, 124 S.Ct. at 2521–22. Summerlin did not consider the retroactive application of Apprendi's holding that sentencing facts necessary to increase a maximum statutory sentence be found beyond a reasonable doubt rather than by a preponderance of the evidence. See Summerlin, —— U.S. at —— n. 1, 124 S.Ct. at 2522 n. 1.

quantum of proof requirement, did not announce watershed rule); *see also Sepulveda v. United States*, 330 F.3d 55, 61 (1st Cir.2003) (holding, in addressing *Apprendi's* retroactivity, that " 'a decision ... by a judge (on a preponderance standard) rather than a jury (on the reasonable-doubt standard) is not the sort of error that necessarily undermines the fairness ... of judicial proceedings,' " quoting *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir.2002)); *Coleman v. United States*, 329 F.3d 77, 88–90 (2d Cir.2003) (rejecting argument that *Apprendi's* requiring Government to prove sentencing factors beyond a reasonable doubt was watershed rule of criminal procedure). We conclude, therefore, that *Blakely* did not announce a watershed rule of criminal procedure that would apply retroactively to initial § 2255 motions. *See, e.g., Rowell v. Dretke*, 398 F.3d 370, 379, 2005 WL 151916, at *8 (5th Cir. Jan.25, 2005); *Rucker v. United States*, 2005 WL 331336, at *1 (D.Utah Feb.10, 2005); *Gerrish v. United States*, 353 F.Supp.2d 95, 96, 2005 WL 159642, at *1 (D.Me. Jan.25, 2005); *United States v. Johnson*, 353 F.Supp.2d 656, 657–58, 2005 WL 170708, at *1 (E.D.Va. Jan.21, 2005); *see also In re Anderson*, 396 F.3d 1336, 1339 (11th Cir.2005) (noting "the Supreme Court has strongly implied that *Blakely* is not to be applied retroactively"); *cf. McReynolds*, 397 F.3d at 481 (7th Cir. 2005) (holding *Booker* does not apply retroactively in initial § 2255 motions).

### III. Conclusion.

For these reasons, we hold that *Blakely* does not apply retroactively to convictions that were already final at the time the Court decided *Blakely*, June 24, 2004. Because Price's convictions were clearly final

---

* John W. Suthers, Attorney General for the State of Colorado, is substituted as a respon-

by that date, we DENY his petition for rehearing.

Price's suggestion for rehearing en banc was transmitted to all the judges of the court who are in regular active service as required by Fed. R.App. P. 35. No member of the panel and no judge in regular active service on the court requested that the court be polled on rehearing en banc. Therefore, the suggestion for rehearing en banc is also DENIED.