**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANGELO M. DEGENHARDT,

Defendant - Appellant.

No. 07-4256

(D. Utah)

(D.C. No. 2:03-CR-00297-PGC-1)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

**I. INTRODUCTION**

In 2005, Angelo Degenhardt pleaded guilty to one count of securities fraud. The district court sentenced him to sixty months' probation. In 2007, the district court issued a summons based on a petition by the United States Probation Office ("USPO") alleging Degenhardt violated the terms of his probation by traveling without permission and failing to notify the USPO he was employed. After Degenhardt admitted both violations, the district court revoked his probation and

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentenced him to forty-one months' imprisonment. Degenhardt appeals, asserting the district court erred when it (1) refused to continue the hearing on the revocation of probation; and (2) imposed sentence in reliance on evidence not available to the defense. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

In 2003, Degenhardt was indicted on multiple counts of, *inter alia*, mail and securities fraud. He pleaded guilty to a single count of securities fraud, in violation of 15 U.S.C. §§ 77q(a), 77x. Degenhardt's advisory sentencing range, as set out in the United States Sentencing Guidelines, was forty-one to fifty-one months' imprisonment. Nevertheless, the parties entered into plea negotiations and agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that Degenhardt would serve a sentence of sixty months' probation and pay full restitution.

At the change of plea hearing, the district court began by noting the lenient nature of the sentence set out in the plea agreement. In response, the government identified three justifications for the lenient sentence: (1) delays in bringing the case, along with evidentiary problems, made obtaining convictions less than certain; (2) Degenhardt's health issues could impose serious medical costs on the government should he be imprisoned; and, most importantly, (3) the plea agreement called for full restitution for all victims, something that could best be

achieved if Degenhardt was not imprisoned. Based upon these considerations, the district court accepted the plea, and was thus bound to impose a sentence consistent with the plea agreement. Fed. R. Crim. P. 11(c)(1)(C), (c)(4).

At the sentencing hearing, the district court began by stating the plea agreement "does seem like it's a deal for [Degenhardt]. If I were sentencing in this matter, the sentence I would impose would be around [forty-six] months in prison . . . ." It nevertheless accepted "the proposed arrangement for one reason, which is a full restitution order will be in place." The district court closed by advising Degenhardt as follows: "I should advise Mr. Degenhardt that if I find that he's hiding so much as a dollar from any of the victims in this case that I would have the opportunity and would be inclined to revoke the probation [and] impose a prison sentence . . . ." The district court then imposed a sentence of sixty months' probation, consistent with the parties' plea agreement.

On October 1, 2007, the district court ordered the issuance of a summons based on a petition alleging Degenhardt had violated the terms of his probation by traveling out of state without permission and by being employed at Your Travel Biz Travel Network ("YTB") without informing his probation officer. On October 18 and 19, 2007, the government provided a total of 292 pages of discovery to Degenhardt. On October 23, 2007, Degenhardt moved to continue the October 31, 2007, revocation hearing. He asserted generally that he did not have possession of critical discovery materials and that the government would not

be able to provide the necessary materials until October 24, 2007.  Accordingly, he requested a one-month continuance to allow "time to adequately review the evidence presented by the government, to seek and issue subpoenas, and interview numerous witnesses."  Although the government did not oppose the request, it noted the grant of a continuance would necessitate the expenditure of additional judicial resources as the judge assigned to the case, the Honorable Paul Cassell, was stepping down from the bench effective November 1, 2007, and a new judge would have to be assigned.

The district court denied the motion to continue, indicating it did not believe there was outstanding discovery critical to the question of whether Degenhardt violated the conditions of his probation.[1]  The district court noted "significant discovery has already been provided to the defense regarding these allegations," including Degenhardt's bank account information, the Judgment and Commitment Order signed by Degenhardt, employment documents, and restitution account information.  With respect to Degenhardt's assertion about the need for

---

[1]In this regard, the district court noted as follows:

Degenhardt contends, somewhat vaguely, that "critical discovery" is not yet available and therefore this matter must be continued.  Yet his motion fails to explain with any precision what that discovery is. . . .  The court is unconvinced [] a continuance is necessary . . . .  The facts surrounding these allegations [of probation violations] can be quickly established—to wit, either the defendant left the Northern District of California or he did not, and either the defendant worked for [YTB] or he did not.

-4-

interviews and additional records, the district court indicated the allegations in the petition were not remotely complex and related to information uniquely within Degenhardt's control.[2] Accordingly, the district court denied Degenhardt's motion to continue and advised the parties to be prepared to fully present their cases, including the question of what should happen should the court find a violation of supervised release at the October 31 hearing.

Although it denied Degenhardt's motion to continue, the district court took an important step to ameliorate any potential prejudice to Degenhardt. First, the district court established a deadline for materials it would consider at the revocation hearing:

> [O]ut of an abundance of caution and to be completely fair to the defendant, the court will direct that the evidence that the government

---

[2]According to the district court:

[T]he defendant alleges that "numerous individuals will have to be interviewed, either telephonically or in person and various records will either have to be retrieved or subpoenaed." The court has just one question about this assertion: Why? Did the defendant travel outside of California without permission and admit that fact? If so, that allegation can be quickly resolved next week. Similarly, did the defendant work for YTB and admit that fact? Again, this is a narrow issue that can be quickly determined. Moreover, nothing in the defense motion for a continuance even asserts that the defendant will deny either of these two allegations. Of course, if the defendant is going to admit these allegations, then there is absolutely no need for a continuance. Moreover, the information seems to be uniquely within [] Degenhardt's control. He would know, for example, whether he went to St. Louis or not and whether he was paid to do that or not. This is not a situation where the government has unique control over information that must be disclosed to the defense.

-5-

will present at next week's hearing will be limited to that which is provided to the defense by close of business on October 25, 2007.[3] That will give the defendant nearly a week to prepare for the hearing. The court also directs the [USPO] to promptly provide to defense counsel a violation report containing any information that the court will consider in the event that the defendant is determined to have violated his conditions of supervision.

The district court further indicated that if it should become apparent at the hearing that additional evidence was necessary, it would revisit the question of a continuance.[4]

The revocation hearing was held, as scheduled, on October 31, 2007. The district court began by announcing it was delaying the hearing to let defense counsel meet with a representative of YTB. When the hearing resumed, the district court asked if defense counsel had a "plan of attack." In response, defense counsel stated "Yes, Your Honor. The defendant, at this time, will admit to the two allegations. . . . And then certainly we would like to address sentencing." As to the question of the appropriate sentence, the parties' arguments focused almost exclusively on the allegation that Degenhardt had failed to report his employment at YTB to the USPO. In particular, the parties

---

[3]Consistent with the district court's order, the government provided a final packet of discovery materials, consisting of 124 pages of written materials, on October 25th.

[4]The district court stated as follows: "At the conclusion of [the revocation hearing], should the defense continue to believe that important information has not been located despite due diligence on the part of the defense that would be material to the defendant's defense, the court will certainly be willing to review that issue at that time."

focused on the question whether Degenhardt's failure to report his activities at YTB was an honest mistake (as Degenhardt contended) or an effort to avoid paying restitution to the victims of his financial crimes (as the government contended). At the conclusion of the parties' arguments, the district court imposed a sentence of forty-one months' imprisonment. In so doing, the district court noted the following: (1) it considered the § 3553(a) factors as well as Chapter 7 of the United States Sentencing Guidelines relating to revocation of probation; (2) an upward variance from the Chapter 7 guidelines was appropriate because Degenhardt attempted to hide his income in an effort to avoid paying restitution; (3) the intent to hide money, not the money amount, was the critical matter; and (4) Degenhardt had previously been given a lenient sentence and told that he would face serious consequences if he violated the terms of his probation.

Following the imposition of sentence, the court asked Degenhardt's counsel if it should "be making any recommendations to the Bureau of Prisons." Defense counsel asked that Degenhardt be permitted to self-report to a facility in California. The district court denied that request and ordered that Degenhardt be taken into custody immediately. In so ordering, the district court stated as follows:

> All right. I am going to direct that the defendant be taken into custody forthwith. I think I may be doing him a favor. I know that from some of the submissions that have been coming back and forth there are health problems and so forth that made it difficult for him to travel back and forth and I think as soon as we can get him into

custody then at that point the Bureau of Prisons and the U.S. Marshals can attend to his health issues and make sure that those are . . . properly addressed.

The defendant also works for a travel agency and he has family in Germany. But the main thing here is just to make sure that he gets into custody quickly so the health issues can be attended to. There is also going to be an additional basis for my ruling which I'm going to put into the record in chambers with my court reporter after the hearing. So for all those reasons, the defendant is to [be] taken into custody.

Defense counsel asked to be present when the court put on the record the "additional basis" for its ruling. Defense counsel noted, "I don't know what you're talking about." The district court denied that request, stating "I want to do that ex parte en camera."

## III. DISCUSSION

*A. Continuance*

The denial of a motion to continue is reviewed for abuse of discretion. *Phillips v. Ferguson*, 182 F.3d 769, 775 (10th Cir. 1999). "A trial judge's decision to deny a motion for a continuance constitutes an abuse of discretion only if the denial was arbitrary or unreasonable and materially prejudiced the [defendant]." *United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (quotation omitted). A review of the record in this case reveals the district court's decision was not unreasonable and, furthermore, did not materially prejudice Degenhardt.

As noted by the district court, the primary question to be addressed at the revocation hearing—whether Degenhardt violated his terms of supervised release—was not complicated. Furthermore, the facts relevant to the questions of whether he traveled without permission and worked without reporting his employment were uniquely within his control. Finally, Degenhardt admitted at the hearing that he had violated the terms of his probation and does not argue on appeal that he would have done otherwise if a continuance had been granted. Thus, it is difficult to see how he was prejudiced in any way by the district court's denial of his request for a continuance.

To the extent Degenhardt argues on appeal that the denial of a continuance deprived him of the opportunity to develop evidence in mitigation relating solely to the question of what sentence he should receive should his probation be revoked, it is far from clear he raised such a claim before the district court. *Cf. United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (noting this court does not consider arguments raised for the first time on appeal). Even if he did raise such a claim, however, the district court still acted reasonably in denying the continuance. First, granting Degenhardt's request would have caused the expenditure of additional judicial resources. Judge Cassell was well versed in the nuances of this complex financial fraud case as he was the original sentencing judge. Because Judge Cassell was preparing to leave the bench, the granting of the requested continuance would have necessitated a new judge completely

familiarizing herself with the case. This is a countervailing consideration the district court was entitled to consider in deciding whether to grant a continuance. Furthermore, when it did deny the continuance, the district court specifically ordered that the government could not rely on any evidence at the revocation hearing not provided to defense counsel by October 25th, six days before the revocation hearing. Thus, the universe of available information was known before the hearing, seriously limiting the necessity for defense counsel to conduct extensive interviews on any matter in advance of the revocation hearing. These prophylactic steps served to greatly diminish any potential prejudice to Degenhardt from proceeding with the revocation hearing on its previously scheduled date. Thus, the district court's decision that a continuance was not necessary to protect Degenhardt's right to a fair hearing was neither arbitrary nor unreasonable.

Likewise, the record reveals Degenhardt was not materially prejudiced by the district court's denial of the requested continuance. In his brief on appeal, Degenhardt focuses on perceived questions about the amount of money he earned on his wife's behalf while working at YTB. There is, however, nothing in the record to indicate that the amount of money he earned at YTB played any part in the decision of the district court to arrive at an appropriate term of imprisonment upon revocation of probation. Instead, the district court focused solely on the fact that Degenhardt worked in such a way as to cover up the income earned and,

-10-

thereby, avoided paying further restitution to the victims of his fraud. In addition, Degenhardt has failed to identify on appeal any evidence he would have presented at the sentencing hearing if the continuance would have been granted. Thus, Degenhardt has failed to identify any prejudice to him flowing from the district court's denial of the requested continuance, let alone material prejudice.

Because the denial of the continuance is supported by reasonable considerations and because Degenhardt has shown nothing more than purely hypothetical and abstract harm flowing from the denial of the motion, the district court did not abuse its discretion in denying Degenhardt's request for a continuance.

## B. *Sentencing Based on Undisclosed Evidence*

Degenhardt asserts the district court relied on evidence not available to the defense in arriving at a sentence upon revocation of probation, thereby violating Fed. R. Crim. P. 32.1(b). In so arguing, Degenhardt relies on the statement of the district court at the conclusion of the sentencing hearing that it had an additional basis for his ruling that he would place on the record "ex parte en camera." In response, the government argues the district court relied on undisclosed information solely in the context of determining whether Degenhardt would be allowed to self-surrender to begin serving his sentence. Accordingly, the government argues, there is no factual basis for Degenhardt's assertion he was sentenced on the basis of undisclosed information.

On November 12, 2008, this court, on its own motion and after examination of the entire record, ordered the sealed portion of the sentencing transcript unsealed.[5] The transcript reveals that the additional consideration set out by the district court en camera relates solely to the decision to deny Degenhardt's request to self-surrender to prison. The transcript further reveals the district court had a good reason for taking the very unusual step of going off the record at the conclusion of the hearing: during the sentencing hearing bomb threats were phoned into the district court from area codes close to where Degenhardt resided and, as part of an ongoing investigation, law enforcement thought it imperative to question Degenhardt without tipping off individuals who might be acting in concert with him to disrupt the hearing.

The now-unsealed sentencing transcript definitively reveals the district court did not rely on undisclosed evidence in arriving at Degenhardt's sentence upon revocation of probation. Because it is without a factual basis, Degenhardt's argument based upon Fed. R. Crim. P. 32.1(b) necessarily fails.

---

[5]On the same day this court unsealed the en camera portion of the sentencing transcript, Degenhardt filed an unopposed motion to vacate oral argument and submit this case on the briefs. On November 13, 2008, we granted Degenhardt's motion, vacated oral argument, and ordered the case submitted on the briefs.

## IV. CONCLUSION

For those reasons set out above, the United States District Court for the District of Utah is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge