FILED
United States Court of Appeals
Tenth Circuit

February 11, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROBERT ARTHUR REED,

      Defendant - Appellant.

Nos. 13-8073 & 14-8018
(D.C. No. 1:12-CR-00058-SWS-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.

Defendant Robert Arthur Reed appeals from two district-court orders. The

first (Appeal No. 13-8073) entered judgment on his conviction, by guilty plea, of

conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1349, 1341,

and 1343, and conspiracy to commit money laundering in violation of *id.* § 1956(h).

Defendant was sentenced to two concurrent terms of 151 months' imprisonment

followed by three years' supervised release, and was ordered to pay restitution of

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

$4,425,034.63. The second order (Appeal No. 14-8018) forfeited various assets of Defendant in favor of the United States. The two appeals have been consolidated for purposes of briefing, record, and submission. We reject all of Defendants' assignments of error and affirm the orders of the district court.[1]

Defendant's convictions arose from a scheme to sell investments in wind-farm projects that did not exist. Notwithstanding his guilty plea admitting the elements of the charged offenses, he now challenges his convictions and resultant forfeitures on the grounds that (1) the alleged offenses were not "ripe" or "justiciable," because the investment scheme had not culminated in any criminal securities violations when this prosecution was initiated; and (2) the district court lacked subject-matter jurisdiction, because the Attorney General initiated this prosecution without first obtaining a referral from the Securities and Exchange Commission (SEC) under 15 U.S.C. § 77t(b). Defendant also objects to several sentence enhancements imposed by the district court. Finally, he claims that he received ineffective assistance of counsel in the proceedings below. Because this last claim was not raised and ruled on in the district court, however, it is not properly brought in this direct criminal appeal and must be pursued on collateral review. *See United States v. Battles*, 745 F.3d 436, 457 (10th Cir.), *cert. denied*, 135 S. Ct. 355 (2014).

---

[1] Defendant is proceeding pro se. He was initially represented by counsel for Appeal No. 13-8073, from the judgment of conviction and sentence, but this court granted counsel's motion to withdraw and Defendant's motion to proceed pro se. He has from the outset appeared pro se in Appeal No. 14-8018.

## A. Ripeness/Justiciability

When Defendant pleaded guilty, he waived all defenses except those relating to subject-matter jurisdiction and a narrow class of constitutional claims involving the right not to be hauled into court. *See United States v. De Vaughn*, 694 F.3d 1141, 1145-46, 1153 (10th Cir. 2012). His guilty plea constitutes a binding admission that he did in fact commit the offenses of conviction. *Id.* at 1152 n.6. The government contends that Defendant's ripeness/justiciability objection is nothing more than a belated (and facially dubious) factual-innocence defense barred by his admission of guilt. We agree.

The thrust of Defendant's position is that he committed no crime because the government initiated this prosecution before an obligation to pay a return to defrauded investors arose. If they lost millions of dollars investing in nonexistent wind-farm projects based on misrepresentations by members of the conspiracy, the fault, he insists, lay with the government; nothing criminal could have been done by him and his associates until their fraud ripened into unpaid returns.

There are numerous problems with this argument, but it suffices to say that Defendant cites no authority that a criminal conspiracy does not arise until the contemplated substantive crime is committed and the victims of that crime irrevocably incur their losses. Indeed, the law is squarely to the contrary: "One can be guilty of a conspiracy to commit an offense without committing the substantive offense itself." *United States v. Lake*, 472 F.3d 1247, 1263 (10th Cir. 2007).

Defendant does not challenge the factual basis of his plea, which conclusively established his guilt with respect to the elements of the charged criminal conspiracy.

**B. SEC Referral**

Defendant insists that "once the SEC has investigated, determined, and referred a [securities] violation, then and only then can the appropriate district empanel a grand jury and investigate" for any criminal prosecution relating to the violation of securities laws. Aplt. Opening Br. at 17. He contends that this unsatisfied prerequisite to criminal prosecution—applicable here, he argues, because the charged conspiracy concerned investments qualifying as securities[2]—is a limitation on the district court's subject-matter jurisdiction. This argument is meritless.

Under 18 U.S.C. § 3231 the district courts have jurisdiction over "all offenses against the laws of the United States." Absent an express limitation imposed on that jurisdiction by some other statute, § 3231 is "the beginning and the end of the jurisdictional inquiry" in criminal cases, *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011) (internal quotation marks omitted). The other statute invoked by Defendant imposes no such limitation. All it says is that "the [SEC] may transmit such evidence as may be available concerning [illegal securities] acts or practices to the Attorney General, who may, in his discretion, institute the necessary criminal

---

[2]     The basis for our rejection of Defendant's jurisdictional contention does not require us to delve into the intricacies of what constitutes a "security" implicating the authority of the SEC.

proceedings." 15 U.S.C. § 77t(b). Nothing in this discretionary language suggests that an SEC referral is a prerequisite to criminal prosecution by the Attorney General of offenses relating to securities—much less a prerequisite to the district court's jurisdiction over such an offense.

This court rejected a similar argument in connection with referrals by the Federal Election Commission (FEC) for prosecution of campaign-finance crimes in *Bialek v. Mukasey*, 529 F.3d 1267 (10th Cir. 2008). Our analysis in that case is applicable here. First, we "emphasize[d] that we cannot presume that Congress has divested the Attorney General of his prosecutorial authority absent a clear and unambiguous expression of legislative will." *Id.* at 1270 (internal quotation marks omitted). We then examined the language of the Federal Election Campaign Act (FECA) for an expression of such legislative will, and found none:

> FECA[] speaks only to the power of the FEC. It requires a vote of four commissioners before the FEC may refer a matter for criminal prosecution, but this provision, by its clear terms, restricts only the FEC. Nowhere in FECA do we find a single phrase limiting the Attorney General's powers. If Congress had wished all campaign finance litigation, both civil and criminal, to originate with the FEC, only a few lines of statutory text would have been required. Instead, Congress explicitly granted the FEC only exclusive jurisdiction with respect to civil enforcement of FECA's provisions. The obvious implication, uncontroverted by any words in the statute, is that the FEC and Attorney General retain concurrent jurisdiction to investigate criminal matters.

*Id.* at 1271 (citation, footnote, emphasis, and internal quotation marks omitted).

Like the FECA provision at issue in *Bialek*, nothing in § 77t(b) purports to limit the prosecutorial authority of the Attorney General.  The Attorney General is mentioned in § 77t(b), but in *recognition*—not limitation—of his discretionary authority to initiate criminal prosecutions.

Intertwined with his SEC-referral objection, Defendant also argues that a securities violation is a necessary predicate for guilt on the conspiracy counts and, he contends, no such violation occurred.  This argument is meritless for at least two reasons.  First, "[o]ne can be guilty of a conspiracy to commit an offense without committing the substantive offense itself." *Lake*, 472 F.3d at 1263.  Second, this is really just another version of the argument that he is innocent of the conspiracy counts to which he pleaded guilty—that "[t]here was never any criminal conduct in this case."  Aplt. Opening Br. at 18.  Again, his participation in a criminal conspiracy is precisely what his guilty plea established.

## C.  Sentence Enhancements

Some of Defendant's challenges regarding sentence enhancements also rely on his meritless position that the crimes to which he pleaded guilty had not occurred.  For example, he insists that the 18-level enhancement in U.S. Sentencing Guidelines Manual (USSG) § 2B1.1(b)(1)(J) for fraud crimes generating losses in excess of $2,500,000 is inapplicable because there were in fact no losses arising from a crime.  But he participated in a fraudulent conspiracy obtaining over $4,000,000 from investors and there is no claim that the money was repaid or that the fraudulently

promoted venture ever materialized for their benefit. Similarly, he argues that the four-level enhancement in USSG § 2B1.1(b)(2)(B) for fraud offenses involving 50 or more victims is inapplicable because there were in fact no victims of a crime. Again, his plea established the crime, while the evidence at sentencing established that the crime had 83 victims.

Defendant's challenge to use of the two-level enhancement in USSG § 2S1.1(b)(2)(B) for money laundering in violation of 18 U.S.C. § 1956 is meritless for a different reason. He contends that this enhancement is precluded by an application note directing that "[s]ubsection (b)(2)(B) shall not apply if the Defendant was convicted of a conspiracy under 18 U.S.C. § 1956(h) *and* the *sole object* of that conspiracy was to commit [a money laundering] offense set forth in 18 U.S.C. § 1957." USSG § 2S1.1, cmt. n.3(C) (emphasis added). But the conspiracy in this case did not have § 1957 as its sole object; it also encompassed conspiracy to violate § 1956.

Finally, Defendant challenges imposition of the four-level enhancement in USSG § 3B1.1(a) for being an organizer or leader of the criminal conspiracy. He insists that the evidence at sentencing failed to support this enhancement. "The government bears the burden of proving sentencing enhancements by a preponderance of the evidence." *United States v. Ramos*, 695 F.3d 1035, 1039 (10th Cir. 2012) (internal quotation marks omitted). Applying a clear-error standard of review to this factual question, we may reverse the district court only if "on the

- 7 -

entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Shengyang Zhou*, 717 F.3d 1139, 1149 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 458 (2013). We are left with no such conviction here.

As we noted recently, indicia of a leadership or organizational role in a criminal enterprise include:

> "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."

*Id.* (quoting USSG § 3B1.1, cmt. n.4 (2012)). The government presented sufficient evidence to establish the following: Defendant exercised control over all the invested funds, most of which came into accounts he opened as the sole signatory with the authority to withdraw funds for distribution to other members of the conspiracy. He also was responsible for setting up the many drop boxes used as company addresses for collecting and forwarding investor funds to the accounts he controlled—drop boxes set up with his credit card and phone number by someone with a name identified as an alias he used for this purpose. As for solicitation activities, while a Greg Doss ran the "boiler room" where sales people worked, the sales pitches and what investors should be told came from Defendant, who also participated in periodic conference calls to provide investors with information and to answer questions the sales people were not equipped to handle. In addition, in the one illustrative example

of a defrauded investor detailed at the sentencing hearing, a letter sent to assure the investor that a (nonexistent) wind turbine had been purchased with his $250,000 investment was written and sent to Mr. Doss's office by Defendant with the direction that it be cut and pasted and forwarded to the investor under the name of one of Mr. Doss's staff. Another participant, whose various duties included travelling to South Dakota to erect a sign indicating progress where a wind farm was supposed to be under construction, specifically told an investigator that he "worked for Robert Reed." Finally, while Defendant insisted he was merely a consultant paid a yearly salary of $125,000 by Mr. Doss, evidence regarding the accounts under his sole control showed cash withdrawals (which, of course, only Defendant could make) as well as direct transfers of funds into his own personal account totaling approximately $700,000 over a period of just two and one-half years.

The nature and extent of Defendant's authority over, participation in, and remuneration through the conspiracy persuade us that the district court did not commit clear error in finding him a leader or organizer. Defendant sought to deflect this role onto Mr. Doss, but even if Mr. Doss might also be deemed a leader or organizer, we have recognized that "[m]ore than one person can qualify as a leader or organizer of a single criminal association or conspiracy," *Shengyang Zhou*, 717 F.3d at 1149.

The judgments of the district court are affirmed.  Defendant's motion to supplement the record, which raises numerous matters unrelated to the issues on this appeal and nothing that affects our disposition, is denied.

Entered for the Court


Harris L Hartz
Circuit Judge