**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

ROBERT A. REED,

    Defendant - Appellee.

No. 18-8042
(D.C. No. 1:16-CV-00245-SWS and)
1:12-CR-00058-SWS-1
(D. Wyoming)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

Petitioner Robert Reed, a federal prisoner proceeding pro se,[1] seeks a Certificate

of Appealability ("COA") to challenge the district court's dismissal of his 28 U.S.C.

§ 2255 petition to vacate, set aside, or correct his sentence. The district court dismissed

Mr. Reed's petition. We deny Mr. Reed's COA request and dismiss the appeal.

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Mr. Reed is proceeding pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## I.    BACKGROUND

In 2012, the United States charged Mr. Reed and others with crimes involving a scheme to sell investments in non-existent wind farm projects. Specifically, in a second superseding indictment, the Government charged Mr. Reed with nine counts of mail and wire fraud, money laundering, and conspiracies to commit these crimes. Mr. Reed ultimately pleaded guilty to conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343, and to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The district court accepted his plea and sentenced him to a term of 151 months' imprisonment. On direct appeal, Mr. Reed challenged his conviction, his sentence, and the district court's order forfeiting various assets to the United States. We affirmed each of those rulings in *United States v. Reed*, 602 F. App'x 436 (10th Cir. 2015) (unpublished). Addressing the challenge to his conviction, this court determined that the Government had presented sufficient evidence that:

> Defendant exercised control over all the invested funds, most of which came into accounts he opened as the sole signatory with the authority to withdraw funds for distribution to other members of the conspiracy. He also was responsible for setting up the many drop boxes used as company addresses for collecting and forwarding investor funds to the accounts he controlled—drop boxes set up with his credit card and phone number by someone with a name identified as an alias he used for this purpose. As for solicitation activities, while a Greg Doss ran the "boiler room" where sales people worked, the sales pitches and what investors should be told came from Defendant, who also participated in periodic conference calls to provide investors with information and to answer questions the sales people were not equipped to handle. In addition, in the one illustrative example of a defrauded investor detailed at the sentencing hearing, a letter sent to assure the investor that a (nonexistent) wind turbine had been purchased with his $250,000 investment was written and sent to Mr. Doss's office by Defendant with the direction that it be cut and pasted and forwarded to the investor under the name of one of Mr. Doss's staff. Another participant,

2

whose various duties included travelling to South Dakota to erect a sign indicating progress where a wind farm was supposed to be under construction, specifically told an investigator that he "worked for Robert Reed." Finally, while Defendant insisted he was merely a consultant paid a yearly salary of $125,000 by Mr. Doss, evidence regarding the accounts under his sole control showed cash withdrawals (which, of course, only Defendant could make) as well as direct transfers of funds into his own personal account totaling approximately $700,000 over a period of just two and one-half years.

*Id.* at 440–41.

During the criminal proceedings and on direct appeal, Mr. Reed was represented by several different attorneys. After his initial arrest, the U.S. District Court for the District of Wyoming arraigned Mr. Reed on April 5, 2012, at which time an attorney from the Federal Public Defender's Office represented Mr. Reed. Four days later, attorney Richard Szekely filed a notice of appearance for himself and Utah attorney Sonny Olsen as privately-retained counsel for Mr. Reed. But after Mr. Reed used Mr. Olsen to send proceeds obtained in the fraudulent scheme to Wyoming attorneys including Mr. Szekely, the district court excused Mr. Szekely and appointed the Federal Public Defender's Office to represent Mr. Reed.

On August 1, 2012, the Wyoming district court arraigned Mr. Reed on a superseding indictment and Assistant Federal Public Defender James Barrett appeared as his counsel. Mr. Barrett represented Mr. Reed until January 2, 2013, when the district court granted his motion to withdraw because Mr. Reed had refused to communicate with him and had filed a grievance against him with the Wyoming State Bar. The district court then appointed attorney Eric Palen to represent Mr. Reed beginning January 9, 2013.

3

After Mr. Reed pleaded guilty, but before he was sentenced, attorney Scott Powers filed a notice of appearance as retained counsel for Mr. Reed. Mr. Palen then moved to withdraw, but the district court denied his motion. As a result, Mr. Palen and Mr. Powers both appeared with Mr. Reed at sentencing. On direct appeal, Mr. Powers entered an appearance for Mr. Reed but later withdrew.

After "filing . . . numerous frivolous motions attempting to collaterally attack in some fashion the validity of his conviction and/or sentence," Mr. Reed timely filed his initial § 2255 motion to vacate and set aside his conviction and sentence on October 3, 2016. ROA at 220. In his § 2255 motion, Mr. Reed petitioned the district court for relief on three grounds: (1) his plea, conviction, and sentence violated his right to effective assistance of counsel under the Sixth Amendment; (2) he received ineffective assistance of counsel during the pretrial, plea, sentencing, and appeal phases of his case; and (3) his conviction and sentence violated the First, Fourth, Fifth, Sixth, and Eighth Amendments. The district court considered only the Sixth Amendment claims in Mr. Reed's § 2255 motion, observing that "[r]egarding asserted violations of the First, Fourth, Fifth and Eighth Amendments[,] . . . Defendant offers no specific allegations or argument in support." *Id.* The district court also considered and rejected three arguments Mr. Reed raised in other motions: (1) an argument that "he must be re-sentenced pursuant to Amendment 794 which amended the commentary governing minor role adjustments under U.S.S.G. § 3B1.2"; and (2) a request for "discovery in the form of production of documents and depositions on certain witnesses, including his attorneys Scott Powers and

Eric Palen and Assistant United States Attorney Lisa Leschuck"; and (3) a "Motion to Set Aside Conviction Due to Alleged Destruction of Evidence." *Id.* at 239–40.

The district court denied all Mr. Reed's claims for relief, concluding:

> Underlying all of Defendant's arguments is his insistence that he committed no crime. However, "Defendant does not challenge the factual basis of his plea, which conclusively established his guilt with respect to the elements of the charged criminal conspiracy." [*Reed*,] 602 F. App'x at 438. Defendant has failed to establish his counsel's representation "fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." [*United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006).] Because the Court can resolve each of Defendant's ineffective assistance of counsel claims on the record, he is not entitled to an evidentiary hearing as he suggests.

*Id.* at 26.

Finally, the district court denied Mr. Reed's motion to set aside his conviction, reasoning that the motion "raise[]d a brand new substantive claim unrelated to the ineffective assistance of counsel claims which are the subject of his original § 2255 motion" and therefore could not relate back to the filing date of the original § 2255 motion. *Id.* at 241. Thus, the court concluded the "new claim falls well outside the one-year limitation period applicable to § 2255 motions." *Id.* The district court declined to grant a COA on any issue. *Id.* at 242–43.

Mr. Reed responded by filing a series of motions with this court. Because he had failed to file a combined opening brief and application for a certificate of appealability by the November 19, 2018 deadline, we dismissed his appeal on November 26, 2018, for failure to prosecute. One month later, on December 12, 2018, Mr. Reed filed his combined brief and application for a COA. Construing a subsequent letter from him as a

5

motion to reinstate the appeal, we granted his request and reinstated the appeal. In that order, we also reinstated: (1) Mr. Reed's *Motion for Leave to Proceed on Appeal without Prepayment of Costs or Fees*; (2) Mr. Reed's *Motion for Summary Disposition Due to Mootness*; (3) Mr. Reed's *Renewed Motion to Correct the Record*; and (4) Mr. Reed's *Motion to Correct the Record*. We also "caution[ed] Mr. Reed that any future motions that duplicate motions he has already filed in this appeal may be stricken." Order Reinstating Appeal, at 2 (Dec. 21, 2018). Since then, Mr. Reed has filed a *Motion for Leave to Amend Initial Section 2255 Motion on Newly Discovered Brady Violations*.

## II. ANALYSIS

### A. *Standard of Review*

Because the district court denied Mr. Reed a COA, we lack jurisdiction to consider the merits of his appeal unless we first issue a COA. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Okyere v. Rudek*, 732 F.3d 1148, 1149 (10th Cir. 2013) (quoting 28 U.S.C. § 2253(c)(2)). To make such a showing, the petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 petition] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 1149–50 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where the "district court has rejected the constitutional claims on the merits, the showing required . . . is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

6

debatable or wrong." *Slack*, 529 U.S. at 484. On the other hand, where the district court has rejected the claims "on procedural grounds without reaching the prisoner's underlying constitutional claim," the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis added).

## B. *Discussion*

On appeal, Mr. Reed does not expressly challenge the district court's conclusions regarding his Sixth Amendment arguments. Instead, he raises three new claims of error: (1) that "[t]he entire case or controversy is moot, and this court lacks subject matter jurisdiction; (2) "Breach of the Plea Agreement"; and (3) "Brady violations." Pet'r's Br. at 1. In addition to these arguments, we discern from his briefing two ineffective-assistance-of-counsel claims: one based on his lack of representation on direct appeal and another based on his trial counsel's failure to object to the Government's alleged non-disclosure of evidence.[2] We address each of these arguments in turn below.

---

[2] In his *Affidavit to Accompany Motion for Permission to Appeal in Forma Pauperis*, Mr. Reed listed eight issues on appeal: "Brady violations," "Knowing presentation of false evidence," "Expired Grand Jury," "Lack of Jurisdiction," "failure to hold evidentiary hearing," "failure to rule on the issues," "improper conversion of supplemental claim as second or successive," and "breach of the plea agreement." But he provides no argument in his briefing to support his claims of "Expired Grand Jury" or "failure to rule on the issues," so we do not consider these claims. And because we construe his references to "Knowing presentation of false evidence" and "improper conversion of supplemental claim" as parts of his *Brady* argument, we address these claims in that context.

## 1.    Mootness

Mr. Reed devotes most of his briefing to an argument that his case is "moot," citing the "Article III requirement that federal courts may *only* decide actual, ongoing cases or controversies."[3] He elaborates:

> This case is moot because the case or controversy claimed by prosecutors, does not, or no longer exists. i.e. a scheme to sell investments in wind farm projects; taking money to fund wind farms in Wyoming; lying for money; selling investments in wind farms to unwitting investors, which make material false promises, including the promise of a 140% return within one year, and the promise that all funds will be used to construct wind farms in Wyoming. Importantly, none of it ever happened.

Pet'r's Br. at 3. Mr. Reed did not raise this argument before the district court. Absent extraordinary circumstances, we do not consider arguments made for the first time on appeal. *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012). This rule applies even when "an appellant is attempting to raise . . . a new theory that falls under the same general category as [a previous] argument." *Id.* (quoting *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002)).

Mindful of this fact, Mr. Reed observes that mootness is a jurisdictional issue which "can be raised at any time, including the first time on appeal." Pet'r's Br. at 28. He is correct that Article III's "'case or controversy' requirement applies at all stages of review" and that mootness, as a "threshold issue of jurisdiction," can be raised at any time. *Colo. Off Highway Vehicle Coalition v. U.S. Forest Service*, 357 F.3d 1130, 1133

---

[3] Prior to filing his Application for a COA, Mr. Reed filed a *Motion for Summary Disposition Due to Mootness*. This motion is duplicative of the arguments in Mr. Reed's Application for a COA before us and is untimely. We therefore do not consider it.

(10th Cir. 2004). Contrary to Mr. Reed's argument, however, whether a criminal case is moot has nothing to do with the strength of the Government's evidence. Rather, "[a] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Hagos v. Raemisch*, 811 F.3d 363, 368 (10th Cir. 2015) (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)). Because Mr. Reed is incarcerated, his conviction unquestionably has ongoing legal consequences and this matter is not moot.

In any event, even if we were to agree that Mr. Reed's habeas action is moot, Mr. Reed would not be entitled to relief. To the contrary, the proper action for a moot issue on habeas review is dismissal, not a grant of relief. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (noting in a habeas case that "mootness, however it may come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so"); *Walker v. United States*, 680 F.3d 1205, 1206 (10th Cir. 2012) (dismissing petition for post-conviction relief as moot).

Mr. Reed's claim is best construed not as a mootness argument, but as a sufficiency-of-the-evidence argument. *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (describing the sufficiency-of-the-evidence inquiry as asking "whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt"). But he failed to raise such an argument before the district court. *See* ROA at 242 ("Defendant does not challenge the factual basis of his plea, which conclusively established his guilt with respect to the elements of the charged criminal conspiracy." (quoting *Reed*, 602 F. App'x at 438)). Furthermore, we discern no extraordinary circumstances justifying

9

deviation "from the general rule that we do not address arguments presented for the first time on appeal," *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002), particularly given Mr. Reed's "guilty plea admitting the elements of the charged offenses," *Reed*, 602 F. App'x at 437; *see also United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

## 2.    Breach of the Plea Agreement

Mr. Reed states that he "cannot brief this issue without access to the record and transcripts," which he says he has not received.[4] Pet'r's Br. at 4. Nevertheless, "without waiving this issue, and preserving the right to amend when [he] obtains access to the record and transcripts," he summarizes the argument: Mr. Reed claims that after he bargained for a provision in his plea agreement to retain his right to appeal, "the government immediately sought to enforce an appellate waiver provision of the plea agreement." *Id.* But it is unclear how the Government could have breached the plea

---

[4] Mr. Reed has repeatedly protested the requirement that he pay for copies of documents. *See* 28 U.S.C. § 1913 (Judicial Conference Schedule of Fees). We addressed this issue by order on November 7, 2018, allowing Mr. Reed to file his COA application more than three months after the original deadline and noting that "[t]hough we are sympathetic to Mr. Reed's financial difficulties in paying the copying fee, the fee schedule applies to all litigants." Order, at 2 (Nov. 7, 2018).

agreement, given that Mr. Reed *did* exercise his right to appeal his conviction and sentence. *See Reed*, 602 F. App'x at 437–41. In any event, Mr. Reed did not raise this issue to the district court, so we decline to consider it for the first time on appeal. *See Mora*, 293 F.3d at 1216.

### 3.     *Brady* Violations

Mr. Reed argues on appeal that "83[] ten-page investment contracts . . . used throughout [his] case" by the Government "have never been produced or turned over." Pet'r's Br. at 4. He claims these contracts are both impeachment evidence and exculpatory evidence because they are "false evidence, and siply [sic] do not exist."[5] *Id.* In support of this argument, he claims he requested the 83 investment contracts from the United States Attorney General pursuant to the Freedom of Information Act, and in October 2018, the Attorney General "confirmed and verified that government, the Attorney General or the Department of Justice does not, and never did possess, and never did obtain any investment contracts in any wind farm projects." *Id.* at 43–44.

Mr. Reed did not properly raise this argument before the district court. Although he suggested in his § 2255 motion to the district court that the Government withheld evidence, he did so only by arguing that his counsel performed deficiently by failing to request the allegedly withheld evidence or to object to various actions by the Government and the trial court. *See, e.g.*, ROA at 47 ("Counsel unprofessionally failed to object to

---

[5] Mr. Reed alternatively claims that these 83 investment contracts "do not exist," *see* Pet'r's Br. at 4, "never existed," *see id.* at 53, and that they were "withheld," *see id.* at 26. Because we do not reach the merits of his argument, we need not attempt to reconcile these conflicting theories.

*Brady* violations, specifically 'investor documents' which promised to place funds into 'wind farms projects in Wyoming.'").

To be sure, Mr. Reed did file with the district court a "Motion to Set Aside Conviction Due to Destruction of Evidence or in the Alternative, Motion for Evidentiary Hearing" on October 6, 2017. ROA at 240. In this motion, Mr. Reed made essentially the same argument he now asserts to us: that "'investor documents,' which were the core of the government case," "have been concealed and destroyed by prosecutors, thus, depriving Mr. Reed of the right to present exculpatory evidence and in violation of *Brady*." ROA at 176. Liberally construing this pleading as a § 2255 motion, *see United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006), the district court declined to consider Mr. Reed's argument, reasoning that the "pleading is necessarily a second and successive § 2255 motion, [and] this Court lacks subject matter jurisdiction to consider it absent the prior authorization of the court of appeals." ROA at 240–41. The district court further explained that the motion cannot "be considered simply an amendment to [Mr. Reed's] existing § 2255 motion" under Federal Rule of Civil Procedure 15 because it fell outside the one-year period of limitation under § 2255 and, as it "raise[d] a brand new substantive claim unrelated to the ineffective assistance of counsel claims which are the subject of his original § 2255 motion," it could not relate back to the date Mr. Reed filed his original petition. *Id.* at 241; *see* Fed. R. Civ. P. 15(c).

Mr. Reed filed this petition outside the one-year limitation period for filing a § 2255 motion. *See* 28 U.S.C. § 2255(f)(1). Furthermore, the petition unquestionably asserts a new argument distinct from Mr. Reed's earlier ineffective-assistance arguments

12

and therefore cannot relate back to the filing date of Mr. Reed's original petition. *See United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) ("an untimely amendment to a § 2255 motion" relates back to the original filing date "only if . . . the proposed amendment does not seek to add a new claim or to insert a new theory into the case."). Therefore, jurists of reason would not find it debatable whether the district court erred in its procedural ruling denying Mr. Reed's petition as an untimely amendment to his initial § 2255 petition. Accordingly, we decline to consider the merits of Mr. Reed's new argument for the first time on appeal.[6] *See Mora*, 293 F.3d at 1216.

On March 12, 2019, Mr. Reed sought to supplement his COA application in his *Motion for Leave to Amend Initial Section 2255 Motion on Newly Discovered Brady Violations*. A careful reading of this motion reveals nothing more than reiteration, and sometimes verbatim repetition, of the *Brady* argument Mr. Reed already presented to this court. Because supplementation would be futile, we deny Mr. Reed's motion to amend, and we decline to consider his *Brady* arguments further. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) ("A proposed amendment is futile if the [petition], as amended, would be subject to dismissal." (internal quotation marks omitted)); *see also Moore v. Reynolds*, 153 F.3d 1086, 1116 (10th Cir. 1998) ("Even if Moore had been

---

[6] In the same vein, Mr. Reed asserts for the first time on appeal that the Government's failure to disclose the 83 investment contracts violated the "Jencks Act, Rule 16, Disclosure Orders, ABA model rules, DOJ requirements, and the Constitution." Pet'r's Br. at 24. He refers to these provisions vaguely, and only in the context of arguing that the Government violated his rights by failing to disclose the investment contracts. We decline to address these new assertions for the same reasons we decline to address the *Brady* argument.

allowed to amend his [§ 2254] petition to add the claim, the amendment would have been futile because the claim sought to be added has already been rejected by this court.").

4.   **Ineffective Assistance of Counsel**

Mr. Reed makes two ineffective-assistance-of-counsel arguments on appeal: (1) that he was deprived of representation on his direct appeal and (2) that he received ineffective assistance from his lawyers because they failed to request the investment contracts from the Government and to object to the Government's failure to produce them. Mr. Reed did make this argument in his § 2255 petition to the district court. *See* ROA at 21 ("Counsel failed to . . . object to the fact that no such documents appear in the record and as such, were either withheld, in violation of *Brady*, or never existed and Mr. Reed was sentenced based upon evidence of criminal conduct that does not exist, was fabricated or withheld by the government."). The district court rejected both these arguments on the merits. Therefore, we ask whether the district court's conclusions on these issues were fairly debatable. *Slack*, 529 U.S. at 484.

   *a.  Lack of appellate counsel*

Mr. Reed first argues he was deprived of counsel on direct appeal because "the Court of Appeals allowed CJA counsel Palin to withdraw as CJA counsel, and allowed CJA counsel Powers to proceed, knowing full well that Powers was disqualified from representing [Mr. Reed] due to disciplinary and misconduct issues." Pet'r's Br. at 20. He further alleges that after he terminated Mr. Powers, this court "required [him] to proceed on direct appeal, without counsel." *Id.* at 21. The district court rejected this argument, concluding:

14

> The Defendant . . . cannot credibly claim he was forced to represent himself on appeal when Mr. Powers withdrew because by that time the Defendant had been afforded representation from two court-appointed attorneys (Mr. Barrett and Mr. Palen) and therefore clearly knew he could apply for representation on appeal. The record reveals the Defendant knowingly and voluntarily chose to exercise his right to represent himself.

ROA at 237–38. "[A] defendant who exercises his right to appear *pro se* cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). Mr. Reed admits he "sought the removal of . . . [counsel] Powers," Pet'r's Br. at 21, and despite his awareness of the right to request court-appointed appellate counsel as is evidenced by his numerous changes in counsel throughout his post-conviction odyssey, Mr. Reed did not seek new representation. Therefore, no reasonable jurist would find the district court's rejection of this argument debatable. *See Slack*, 529 U.S. at 484.

b. *Failure to object to alleged Brady violations*

Mr. Reed next argues that Mr. Palin rendered ineffective assistance by "fail[ing] to obtain the prosecutor's file," which he claims would have uncovered *Brady* violations and shown that the Government lacked evidence of illegal investment contracts. *See* Pet'r's Br. at 32. The district court rejected this argument, reasoning:

> Defendant was charged and convicted of conspiracy to commit fraud—selling investments in wind-farm projects that did not exist—based on evidence that he and his co-conspirators made false promises to convince unwitting victims that their money would be used to build wind turbines from which the "investors" would then receive windfall profits . . . . While some "investor documents" were part of the government's evidence, they were not essential to the government's case nor did they undermine the government's case.

15

ROA at 226. The district court concluded, "the factual basis of [Mr. Reed's] guilty plea 'conclusively established his guilt with respect to the elements of the charged criminal conspiracy.'" *Id.* (quoting *Reed*, 602 F. App'x at 438). Addressing Mr. Reed's claim that he would not have pleaded guilty had counsel informed him of the Government's allegedly faulty evidence, the district court observed that Mr. Reed "fails to explain . . . how any such facts would have decisively negated or rebutted the government's evidence as it relates to any element of the charged mail/wire fraud conspiracy and money laundering conspiracy crimes" or "how his belief in the existence of the allegedly non-existent original documents prejudiced him in any way." *Id.* at 227. Indeed, "[o]ne can be guilty of a conspiracy to commit an offense without committing the substantive offense itself." *United States v. Lake*, 472 F.3d 1247, 1263 (10th Cir. 2007). Mr. Reed never challenges the factual basis of his guilty plea. As we determined in Mr. Reed's direct appeal, this factual basis "conclusively established his guilt with respect to the elements of the charged criminal conspiracy." *Reed*, 602 F. App'x 438.

Furthermore, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). "[W]hen a defendant who has pleaded guilty brings an ineffective-assistance claim, he must 'show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Even assuming all of

16

Mr. Reed's claims about the 83 investment contracts to be true, he cannot convincingly argue that his attorney's failure to disclose these contracts prejudiced him. Nothing in these contracts disproves the essential elements of the crimes to which Mr. Reed pleaded guilty. Where Mr. Reed has not shown that any of this alleged evidence would have disproved his guilt, he cannot show that he would not have pleaded guilty had his attorneys discovered it. Therefore, the district court's conclusion that Mr. Reed failed to show ineffective assistance is not fairly debatable. *See Slack*, 529 U.S. at 484.

### III.    CONCLUSION

Mr. Reed has not demonstrated that the district court's assessment of any of his constitutional claims is debatable or wrong. *See id.* Therefore, we **DENY** his request for a COA and **DISMISS** this appeal.[7]

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[7] Before filing his Application for a COA, Mr. Reed filed a *Motion to Correct the Record* and a *Renewed Motion to Correct the Record*, repeating almost verbatim the arguments he now asserts regarding the 83 investment contracts and requesting that we "order the Clerk of the District Court to immediately correct the record to include the government's evidence used in the district court." Mot. to Correct the Record at 22. Because we decline to grant a COA on any of the issues Mr. Reed asserts, we also dismiss these motions as moot.

Mr. Reed has also filed a *Motion for Leave to Proceed on Appeal without Prepayment of Costs or Fees*. But he has not given "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (quotation marks omitted). We therefore deny his application to proceed in forma pauperis.